Robert RICHTER and Frederic
Fisher, Plaintiffs,

v.

Robert ACHS, Jonathan Bell, Edward
Marritz and A–Train Viedeo,
Inc., Defendants.

No. 96 CIV. 6403(CBM).

United States District Court,
S.D. New York.

April 17, 1997.

Jonathan C. Herzog, Bodine & Herzog, New York City, for plaintiffs.

Bardyl R. Tirana, Washington, DC, for defendants.

## MEMORANDUM OPINION

MOTLEY, District Judge.

Defendants have moved for summary judgment on plaintiffs' only federal claim in this action[1], that defendants have violated § 10(b) of the Securities Exchange Act and Rule 10b–5 promulgated thereunder. For the reasons provided below, this motion is granted.

## BACKGROUND

Plaintiffs and individual defendants together formed a closely held corporation, defen-

---

**1.** Plaintiffs had originally made another federal claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") but voluntarily dismissed this claim after defendants' motion for summary judgment was filed.

dant A–Train Video, Inc. ("A–Train"), in which each of the five shareholders was also a director who held 20% of the corporation's stock. The dispute began when plaintiffs first expressed an intent to withdraw from the corporation in February of 1994. The parties disagreed about the proper method of valuing the corporation's shares, with defendants maintaining that the value was to be determined from the corporate tax returns, and plaintiffs insisting that the proper measure was fair market value.[2] On December 22, 1994, the shareholders met and agreed to establish December 31, 1994 as the date by which the valuation of the shares would be fixed. However, though the parties had reached agreement on the date of the valuation, they continued to disagree about the actual value of the shares. This dispute continued throughout most of 1995, until defendants in December of that year sent each plaintiff a check in the amount of $10,014.27, the amount which defendants believed was the value of the shares of the corporation as of December 31, 1994, plus accrued interest. Plaintiffs cashed the checks with a restrictive endorsement reserving their rights to receive another $20,000 which they felt was owed them.

Plaintiffs also allege that during this entire period, defendants met secretly, withheld funds from the corporation, and put corporate receivables into a new bank account to which plaintiffs had no access in order to misrepresent to plaintiffs the value of the shares. They seek relief under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder and raise a number of state law claims as well.

## DISCUSSION

### I.  Summary Judgment Standard

"Uncertainty as to the true state of any material fact defeats [a summary judgment] motion." *Gibson v. American Broadcasting Companies.*, 892 F.2d 1128, 1132 (2d Cir. 1989). It is not the role of the trial court to weigh the evidence presented or to resolve any factual issue, but rather it is the court's job to determine whether, after the parties have conducted adequate discovery, any such issues remain to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); Fed. R.Civ.P. 56(c). A factual issue is unresolved if a reasonable factfinder could determine it in favor of either party. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511; Gibson, 892 F.2d at 1132. Moreover, [t]he court must view the inferences to be drawn from the facts in the light most favorable to the non-movant. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). The non-moving party may defeat the motion for summary judgment by producing sufficient facts to establish a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). "The non-moving party may not rest on the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided [in F.R.C.P. 56], must set forth sufficient facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *accord Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514; *Adickes v. S.H. Kress & Co.* 398 U.S. 144, 159 n. 20, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)(indicating that the last two sentences of Rule 56(e) were added to prevent a party from relying solely upon its pleading in resisting a motion for summary judgment).

### II.  Securities Fraud

### A.  Elements Needed to Establish a Violation of §  10(b) and Rule 10b–5

■ The Supreme Court and the Second Circuit have made clear that allegations of a mere breach of contract or breach of fiduciary duty, without more, do not create a claim under Section 10(b) or Rule 10b–5. *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462,

---

**2.** The Incorporation Agreement clearly indicates that the corporation has the right to repurchase shares at their "book value." However, the parties continue to disagree as to the meaning of that term.

476, 97 S.Ct. 1292, 1302, 51 L.Ed.2d 480 (1977); *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 445 (2d Cir.1971). "Remedies for such violations are generally sought under state laws...." *Bischoff v. G.K. Scott & Co., Inc.*, 687 F.Supp. 746, 748 (E.D.N.Y. 1986)

■ In order for a plaintiff to state a claim of securities fraud under § 10(b) of the Securities Exchange Act of 1934, the following four elements must be established: (1) defendant's misrepresentation or omission of a material fact in connection with the purchase or sale of a security, (2) plaintiffs detrimental reliance, (3) scienter, and (4) employment of the mails, an instrumentality of interstate commerce, or a national security exchange in furtherance of the fraud. *Keenan v. D.H. Blair & Co.*, 838 F.Supp. 82, 85–86 (S.D.N.Y. 1993); *Bischoff*, 687 F.Supp. at 749; *Savino v. E.F. Hutton & Co., Inc.*, 507 F.Supp. 1225, 1231 (S.D.N.Y.1981). Defendants argue that plaintiffs have failed to raise a genuine issue of material fact as to the first, second and fourth elements. Because it is the easiest to deal with, the court addresses the final element first.

## B. Interstate Commerce

Defendants maintain that the court does not have subject matter jurisdiction because Rule 10b–5 requires that "an instrumentality of interstate commerce, or of the mails" be used, and no such instrumentality was used in this case because the corporation is a closely-held New York corporation and all parties involved in this litigation are residents of New York.

■ This court has made clear, however, "that in § 10(b) 'instrumentality' is modified by the phrase 'of interstate commerce', not 'in interstate commerce', and therefore intrastate telephone calls are sufficient to confer jurisdiction." *Heyman v. Heyman*, 356 F.Supp. 958, 969 (S.D.N.Y.1973). *See also Fischer v. New York Stock Exchange*, 408 F.Supp. 745, 757 (S.D.N.Y.1976) (citing *Heyman*). Moreover, "it is well settled that the fraud itself need not be transmitted through the jurisdictional means. All that is necessary is that the designated means be used in some phase of the transaction, which need

not be the part in which the fraud occurs." *Heyman*, 356 F.Supp. at 969. In other words, if a single telephone is used to call the defendants to a meeting at which they engage in fraudulent activity, the jurisdictional element is satisfied.

■ Nonetheless, despite this extremely broad standard, plaintiffs' papers do not note a single, specific incident wherein telephones or the mails were used to engage in some phase of a fraudulent transaction. Plaintiffs do argue that the standard is quite broad and allege generally that the parties traveled across state lines to conduct corporate business, but plaintiffs have failed to cite any portion of a deposition where this is admitted or provide the court with any document which establishes this fact. As was indicated in Sec. I.A *supra*, plaintiffs cannot rely solely upon these allegations to defeat a motion for summary judgment; specific facts must be brought forward. Nevertheless, the court is reluctant to dismiss the case on this ground because (1) it is inconceivable that defendants never used a telephone or sent a letter in furtherance of their alleged scheme to undervalue plaintiffs stock, and (2) defendants have produced a much stronger reason for granting summary judgment; namely, that plaintiffs have introduced no evidence that they relied on any alleged misrepresentations of defendants.

## C. Misstatements and Plaintiffs' Reliance Thereon

■ Defendants allege that plaintiffs have failed to produce a single instance in which defendants have made a misstatement upon which plaintiffs have relied. Indeed, although plaintiffs' opposition papers are replete with allegations that defendants engaged in fraudulent activity such as the opening of a secret bank account, a deliberate undervaluation of the stock, and secret meetings held in the plaintiffs' absence, no specific instances are cited. Plaintiffs only state vaguely that defendants admitted to such fraud without directing the court to any portion of a deposition where such an admission took place. As has been discussed at length above, plaintiffs need to make more of

**34**

a showing than this to survive a summary judgment motion.

However, even if the court were to assume that this alleged fraudulent activity occurred and that defendants did make misstatements of material fact, summary judgment would still be warranted because there is simply no evidence that plaintiffs relied on any of these facts to their detriment. The Supreme Court has made clear that reliance is an essential part of any action brought under Rule 10b–5. *Basic v. Levinson*, 485 U.S. 224, 243, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988); *see also* cases cited in Sec. II.A *supra*. Thus, even if a corporation were to make statements which it knew to be false, a plaintiff could not recover in a 10b–5 action unless it can be shown that he or she either directly or indirectly relied on misstatements in purchasing or selling the securities. *Basic*, 485 U.S. at 243–49, 108 S.Ct. at 989–93 (holding that for publicly traded securities, there is a rebuttable presumption that plaintiffs relied on misstatements because such misstatements would affect the price of the security purchased or sold).

Defendants have demonstrated that there is no genuine issue of material fact on the question of reliance. Plaintiff Richter admitted in his deposition that he had never relied on any misstatements made by defendants, nor was he deceived by defendants. Richter Dep. Tr. 74–75, 85–86. The only misstatements which plaintiff Fischer could identify as being those upon which he relied were contained in a letter of December 5, 1995 in which the defendants state that the value of plaintiffs' shares are worth $9,875.40. Fischer Dep. Tr. 51. However, plaintiffs clearly did not rely on this statement because when they were given checks in this amount (plus accumulated interest) they cashed them with an express reservation allowing them to sue for the rest of the money which they felt they were owed. Similarly, counsel's assertion at the pretrial conference that plaintiff's were "forced" to rely on the price quoted by defendants because key information about a secret bank account and the substance of discussions at secret corporate meetings were withheld from them is simply not true; plaintiffs not only were not "forced" to rely on the price quoted by defendants, they did not rely on it. Plaintiffs never indicated that they thought that the price paid by defendants was a fair or reasonable one. Indeed, they have been engaged in an ongoing dispute regarding the valuation of the stock throughout which their position has never wavered. Had the plaintiffs truly relied on the alleged misrepresentations of the defendants, there would have been no such dispute at the time of sale; plaintiffs would have sold their shares voluntarily and only realized later that a fraud had been perpetrated.

Thus, while plaintiffs may have a state law claim for breach of contract or breach of fiduciary duty, they have no federal claim under Rule 10b–5. The state law claims will have to be resolved in a state court, however, as the court declines to exercise jurisdiction over them.

## CONCLUSION

Thus, for the reasons provided above, this court grants defendant's motion for summary judgment on plaintiff's only federal claim and declines the exercise of jurisdiction over the state law claims.