**ARISTA TECHNOLOGIES, INC., Plaintiff,**

v.

**ARTHUR D. LITTLE ENTERPRISES, INC., Defendant.**

**No. CV 95–789.**

United States District Court, E.D. New York.

Nov. 13, 1998.

Proskauer Rose LLP, New York, NY, for Plaintiff; Steven Kayman, Gregory S. McCurdy, of counsel.

Hamilton, Brook, Smith & Reynolds, Lexington, MA, for Defendant; David Brody, Deirdre Sanders, of counsel.

Paul Weiss Rifkind Wharton & Garrison, New York, NY, for Defendant; Robert S. Smith, of counsel

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case involves a dispute between Arista Technologies, Inc. (the "plaintiff" or "Arista") and Arthur D. Little Enterprises, Inc. (the "defendant" or "ADLE") regarding the licensing agreement of patented technology owned by ADLE. The technology in question, which may revolutionize the way we watch and video-tape our favorite television programs or sporting events, would miraculously allow video cassette recorders ("VCRs") to skip automatically past commercials in videotaped television programs when the videotapes are played back. No more Energizer Bunny parading across our television screen, no more giggling Pillsbury Dough Boy, and no more Michael Jordan hawking products for Haynes, Disney, Nike, McDonalds, or his latest movie. Unfortunately, however, the new technology that was developed in order to revolutionize the way we watch television, has become mired in a legal battle pitting Arista Technologies, the purchaser of the license of the "video spot remover" ("VSR Technology") against Arthur D. Little Enterprises, the owner of the technology.

Presently before the Court is ADLE's Motion to Confirm the Arbitration Award pursuant to section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9 and Arista's Motion to Confirm in Part and Vacate in Part the Arbitration Award pursuant to 9 U.S.C. §§ 6 and 10.

### I. BACKGROUND

Arista and ADLE entered into a License Agreement (the "License") on March 19,

1993. The technology in question enables VCRs to skip past commercial portions of recorded television programs when they are replayed for viewing. ADLE describes its technology, known as "video spot remover" or "VSR technology" as having two components, (1) a "stand alone" device that attaches to a consumer's VCR and provides the VCR with the commercial skipping feature, and (2) the technology by which manufacturers may incorporate the commercial skipping feature into the VCR itself prior to sale. The License gave Arista the right to market the "stand alone" device only while ADLE retained the right to license VSR technology to manufacturers who incorporated the technology directly within the VCR. The License had many provisions concerning the research and development obligations of the VSR technology. Specifically, the License called for both parties to disclose to the other any improvements or inventions related to the stand-alone product. In addition, the License specifically required Arista (referred to in the License as "ATI") to:

> promptly disclose to ADLE, on an ongoing basis, all ATI Technology, as it is developed or acquired. Furthermore, Arista hereby grants to ADLE as non-exclusive, royalty-free, worldwide license to use the ATI Technology and to sublicense others to use the ATI Technology in connection with devices, systems and methods, other than Stand–Alone Devices, that embody the inventions.

(License at 2). The License did provide, however, that "If ADLE licenses ATI Technology to others, ADLE will pay ATI 50% of any gross proceeds from such licenses until Arista's provable technology development expense for the licensed ATI Technology is recouped; thereafter ADLE shall retain all such proceeds." (License at VIII.2). In addition, the License also required Arista to pay royalties to ADLE and to mark ADLE's patent number on their products. The exchange of technology, the repayment of technology expenses by ADLE to Arista, the royalties requirement, and the patent number obligation are the crux of the dispute between the parties.

After entering into the License agreement, Arista hired Michael Harvey of Chambord Technology to further design and develop the Stand–Alone product. ADLE maintains that they "urged Arista to keep the Stand–Alone product simple, so it would be low cost and easy for consumers to use." (ADLE's Memorandum in Opposition at 2). ADLE asserts that Arista ignored their advice and added complex technology to the Stand–Alone product, thus delaying production for almost two years. ADLE contends that they "lost the royalties it would have received on the simplified product which ADLE had urged Arista to design in 1993." *Id.* at 3. Due to their problems ADLE maintains that "Arista has sought to shift the risk and the blame to ADLE ... by seeking recision of the License" in September–October, 1995. *Id.* at 4. ADLE further contends that Arista "embarked on a deliberate strategy of refusing to honor the License requirement that it pay royalties, mark its product with ADLE's patent numbers, and disclose technical developments to ADLE." *Id.*

On the other hand, Arista maintains that they paid ADLE "$750,000 for the License based on representations that the technology was 'proven' and could be developed into a customer product that could be sold to VCR owners for under $100." (Memorandum of Law in Support of Plaintiff's Motion at 1). Unfortunately for Arista, however, both the technology and the $100 estimate were never realized. Arista maintains that in response to their problems they hired Design Labs and Mr. Harvey in order to "salvage the product." *Id.* at 14. Thereafter, Arista claims that ADLE secretly hired Design Labs "to obtain the benefit of Arista's technology without compensating Arista as required by the License." (Declaration of Steven M. Kayman is Support of Arista Technologies' Motion at 4). Then, according to Arista, "ADLE licensed Arista's technology to Arista's competitors, the major VCR manufacturers, who incorporated it at little additional cost into VCRs before Arista's product came to market." *Id.* This caused Arista, in February 1995 to commence a lawsuit in the New York Supreme Court, Suffolk County, and to move for an order enjoining ADLE from unilaterally terminat-

ing the licensing agreement and a declaratory judgment that the product which ADLE was selling to other manufacturers was within the scope of the License and that Arista was therefore entitled to recover their manufacturing costs from ADLE's revenue.

On February 21, 1995, ADLE removed the action to this Court. Shortly thereafter, ADLE moved the Court for an order compelling the parties to arbitrate their dispute and staying the action pending arbitration. Arista cross-moved, and requested that the Court stay arbitration and proceed with the litigation, and that they be permitted to amend their complaint. On January 10, 1996, in a written decision, the Court granted ADLE's motion to compel arbitration and denied Arista's motion seeking permission to amend their complaint and to stay arbitration.

Both parties agreed that the arbitration would be conducted by Maurice L. Zilber, Esq. (the "Arbitrator"). The arbitration proceeded on March 17, 1997 and lasted until April 7, 1997, and included testimony from 20 different witnesses, 479 exhibits, and more than 200 pages of post-hearing briefs by the parties. On July 29, 1997, the Arbitrator submitted a six page decision, entitled, "Award of Arbitrator." The Arbitrator held that while Arista materially breached the License by failing to pay royalties, neglecting to put ADLE's patent number on the technology, and failing to disclose certain technological advances, ADLE must pay Arista approximately $700,000 for the technology it appropriated from Arista without repaying their costs. The Arbitrator did not find, however, that ADLE had committed a breach of License, fraud, misappropriation of Arista's technology, tortious interference with the contract, or a violation of Massachusetts Law.

Specifically, the Award of Arbitration held, in pertinent part, that:

1A. I find Arista Technologies, Inc.'s failure to pay royalties, properly mark products and to disclose improvements in a timely manner to be material breaches of the License Agreement and that, therefore, the license was properly terminated by Arthur D. Little Enterprises, Inc.

1B. I find ARISTA's work on the "MICRO" and associated discussions with VCR manufacturers did not breach any obligation it had to ADLE under the License Agreement.

1C. I find that any possible lapse in insurance coverage was not a material breach of the License Agreement.

1D. I find that ARISTA made good faith efforts to market a stand-alone device within the two-year period from the execution of the License Agreement.

1E. I find that ARISTA's commencement of a declaratory judgment proceeding in Federal Court was not a breach of the License Agreement.

1F. I find that ADLE did not fraudulently induce ARISTA to enter into the License Agreement.

1G. I find that ADLE did not breach its obligations to ARISTA under the License Agreement.

1H. I find that ADLE did not tortiously interfere with the relationship between ARISTA/Chanbord and Design Labs.

1I. I find that ADLE did not misappropriate ARISTA's trade secrets.

1J. I find that neither Party's activities here constituted a violation of M.G.L. Chapter 93A.

1K. I find that ARISTA developed significant items of "ATI Technology" whose "provable technology development expense" was $723,247.52.

1L. I find ADLE has licensed ATI Technology to its licensees.

Accordingly, I award $723,247.52 to ARISTA to be paid by ADLE at the rate of 50% of any gross proceeds from its licensees until such sum has been paid in full. ADLE shall account to ARISTA within thirty (30) days of this Award for any gross proceeds received through June 30, 1997 and shall account to ARISTA thereafter on or before thirty (30) days following the close of each semi-annual period, with payment, if any, to accompany any such accounting.

3. Each Party's request for Attorney's fees and expenses is denied.

After the Award of Arbitration was issued, Arista and ADLE requested reconsideration and modification on various different grounds. In response, the Arbitrator issued a Supplemental Order on August 15, 1997, and a Modified Award on December 17, 1997 (all three awards will be referred to as the "Arbitration Award"). The Supplemental Order states, in relevant part, that:

1. Arista Technologies, Inc. (hereinafter referred to as ATI) shall pay Arthur D. Little Enterprises, Inc. (hereinafter referred to as ADLE) the sum of $13,635.22 in past due royalties.

2. ADLE is to pay ATI up to the undisputed amount of ATI Improvements which is $666,966.98 with the balance of $56,380.54 to be subject to further arguments by the parties.

3. ATI may liquidate its inventory to manufacture Model 500 and sell them in the market in a timely manner. This permission will be in effect until January 31, 1998 but no longer.

Finally, the Modified Award states in pertinent part that:

1. Finding K is hereby modified to read: "I find that ATI developed significant items of 'ATI Technology' whose provable technology development expense was $700,072.52." Accordingly, I modify the award to award $700,072.52 to ATI. Since ADLE in its pleadings did not indicate that it has not yet received gross proceeds of at least $1,400,145.00 ADLE shall pay to PRLLP as Escrow Agent under the Escrow Agreement the sum of $33,105.54 within 14 days of the receipt of this Modified Award.

4. With respect to the sell-off product, Article IV(3) of the License Agreement provides no explicit time limit for this activity. Nonetheless, it is customary to expect licensees to complete their wind-down activities within a period of six to twelve months of license termination. Since I found in effect that the License Agreement was properly terminated in 1995, that period has run. However, until I rendered the Initial Award, ATI did not know for certain whether or not the license had terminated. Therefore, I believe it is appropriate to measure the sell-off period from the date of the Initial Award. While I have already granted ATI the sell-off period it initially sought, I hereby amend my award to permit ATI to sell off inventory until August 30, 1998 but no later since I consider this period quite generous under all of the circumstances.

ADLE contends that the Arbitration Award should be confirmed. Specifically, ADLE contends that:

as the above cited cases make clear, even if the Court were convinced that the Arbitrator erroneously interpreted the License and erroneously determined whether or not, in any given instance, one party had breached an obligation owed to the other party, the Court would still have to confirm the Award .... [T]he Federal Arbitration Act does not permit the parties now to avoid the Arbitrator's determination. Accordingly, the Court should confirm the Arbitration Award in accordance with 9 U.S.C. § 9.

(Defendant's Memorandum in Support of Motion at 5). On the other hand, Arista moves the Court, pursuant to 9 U.S.C. § 6 and 10, for an order vacating sections 1(A), (F), (G), (H), and (I) entirely, vacating parts of paragraphs 1(J) and 3 of the "Award of Arbitrator," vacating paragraph 1 and the second paragraph 3 of the "Supplemental Order of the Arbitrator," and vacating paragraph 4 of the "Modified Award of Arbitrator." Arista also moves the Court pursuant to 9 U.S.C. § 6 and 9 for an order confirming the remainder of the Award of Arbitration, the Supplemental Order, and the Modified Award. As ADLE moves the Court for confirmation of the entire Arbitration Award, it is clear that the portions of the Arbitration Award that Arista seeks to confirm are not at issue.

The Court notes at the out-set the peculiarity of the parties' requests. ADLE, who was ordered to pay approximately $700,000 to Arista seeks to confirm the entire Arbitration Award, while Arista, the recipient of a $700,000 award, seeks to vacate many sections of the Arbitrator's decision. It appears from the submissions of the parties that Arista is not completely satisfied with the Arbi-

trator's decision awarding them approximately $700,000 as they seek an outcome whereby ADLE, in addition to paying Arista $700,000, is ordered to pay damages for breaching the License Agreement.

## II. DISCUSSION

 Jurisdiction in this case is based on diversity of citizenship, and the transactions in question involve interstate commerce. Accordingly, the provisions of the FAA are applicable. *Barbier v. Shearson Lehman Hutton, Inc.,* 948 F.2d 117, 120 (2d Cir.1991).

### A. The standard of review

 Judicial review of an arbitration award is "extremely limited." *Wall Street Associates, L.P. v. Becker Paribas Inc.,* 27 F.3d 845, 849 (2d Cir.1994) (quoting *Fahnestock & Co. v. Waltman,* 935 F.2d 512, 516 (2d Cir.), *cert. denied,* 502 U.S. 942, 112 S.Ct. 380, 116 L.Ed.2d 331 (1991)). "To satisfy arbitration's twin goals of settling disputes efficiently and avoiding long and expensive litigation, arbitration awards are subject to very limited review." *Sanders v. Gardner,* 7 F.Supp.2d 151 (E.D.N.Y.1998) (citing *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,* 103 F.3d 9, 12 (2d Cir.1997)). The Second Circuit has stated that an award must be confirmed so long as it offers even a "barely colorable justification" for its outcome. Matter of Arbitration Between *Andros Compania Maritima,* 579 F.2d 691, 704 (2d Cir.1978). In addition, the Second Circuit has held that, "This severe limitation is the result of the firmly-established, legislatively-entrenched policy favoring resolution ... disputes through arbitration." *St. Mary Home, Inc. v. Service Employees International Union, District 1199,* 116 F.3d 41, 45 (2d Cir.1997). Section 10(a)(4) of the FAA does provide, however, that an arbitration award may be vacated "[w]here the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4) ("section 10").

 In addition to the narrow exceptions provided in section 10, judicial creation has permitted a court to vacate an arbitration award where the arbitrator "manifestly disregard[s] the law in reaching its decision,"

*First Options of Chicago Inc. v. Kaplan,* 514 U.S. 938, 942, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 935–36 (2d Cir.1986), or where the award is irrational. *See I/S Stavborg v. National Metal Converters, Inc.,* 500 F.2d 424 (2d Cir.1974); *Marcy Lee Manufacturing Co. v. Cortley Fabrics Co.,* 354 F.2d 42 (2d Cir.1965). While the Second Circuit has recognized "irrational" as a standard to determine whether an arbitrator's award should be vacated, recent case law in this Circuit has focused on the "manifest disregard" standard. The Second Circuit has been clear that application of the "manifest disregard" doctrine is "severely limited." *DiRussa v. Dean Witter,* 121 F.3d 818, 821 (2d Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 695, 139 L.Ed.2d 639 (1998) (citing Matter of Arbitration Between Government of *India v. Cargill Inc.,* 867 F.2d 130, 133 (2d Cir.1989)). Manifest disregard has been interpreted as "more than error or misunderstanding with respect to the law." *Bobker,* 808 F.2d at 933. Furthermore, the Second Circuit's decision in *Bobker* stated that "error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term 'disregard' implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it." *Id.* Therefore, to modify or vacate the arbitration award on the ground of manifest disregard, the Court is required to find both that "(1) the 'arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether,' and (2) the 'law ignored by the arbitrators ... [was] well defined, explicit, and clearly applicable' to the case." *Dirussa,* 121 F.3d at 821 (quoting *Folkways Music Publishers, Inc. v. Weiss,* 989 F.2d 108, 112 (2d Cir.1993)) (other citations omitted). The Second Circuit in *Saint Mary Home* added that:

> [t]he decision of an [arbitrator] hearing ... a dispute receives limited review: 'as long as the arbitrator is even arguably construing or applying the contract and acting within his scope of authority, that a court

is convinced he committed error does not suffice to overturn his decision.'
*Saint Mary Home,* 116 F.3d at 44 (citing *Harry Hoffman Printing, Inc. v. Graphic Communications Int'l. Union, Local 261,* 950 F.2d 95, 98 [2d Cir.1991] ).

It should be noted that an arbitrator is not required to disclose the basis or rationale upon which their arbitration award is based. *See e.g., Barbier v. Shearson Lehman Hutton Inc.,* 948 F.2d 117, 121 (2d Cir.); *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); *Kurt Orban Co. v. Angeles Metal Systems,* 573 F.2d 739 (2d Cir.1978). Thus, the Court need only infer from the facts of the case, what were the grounds for the arbitration decision. *United Paperworkers Int'l. Union v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). The Supreme Court in *Misco* added that "[a]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.* 484 U.S. at 38, 108 S.Ct. 364. The standard, therefore, when the Arbitrator declines to provide a detailed explanation for his findings is that the Court must confirm the decision "if a ground for the arbitrator's decision can be inferred from the facts of the case." *Sobel v. Hertz,* 469 F.2d 1211, 1216 (2d Cir.1972). "This is so even if the ground for their decision is based on an error of fact or an error of law." *Standard Microsystems Corp.,* 103 F.3d at 13 (quoting *Siegel v. Titan Indus. Corp.,* 779 F.2d 891, 892–93 (2d Cir.1985) [per curiam] ). Finally, the party moving to vacate or modify the arbitration award "bears a heavy burden of proof." *Folkways Music Publishers,* 989 F.2d at 111; *see also Wall Street Associates, L.P.,* 27 F.3d at 848–49.

It is within this framework that the Court addresses Arista's motion to vacate certain sections of the Arbitration Award.

### B. Arista's claims of manifest disregard

Arista's main contention is that the Arbitration Award was internally contradictory. In support of its position, Arista maintains that because the Arbitrator awarded them $700,072.52, the Arbitrator must have found that ADLE failed to comply with section VIII.2 of the License which required it to pay for technology expenses. Thus, Arista argues that ADLE must have materially breached the License. Arista charges that the Arbitrator's finding that ADLE's termination of the License, based upon Arista's material breaches, should be vacated since it was ADLE that breached the License.

Arista also contends that the Arbitrator erred when he found that it materially breached the License by failing to pay royalties, failing to mark patent numbers on the products, and failing to disclose improvements to ADLE in a timely manner. In its Memorandum of Law, Arista admits that it failed to pay royalties. However, they claim that their failure was *"de minimis* and any breach was completely cured when [they] paid the amount found due, with interest." (Memorandum of Law in Support of Plaintiff's Motion at 8). Arista denies that they failed to mark the product with patent markings and that they failed to disclose improvements to ADLE. In addition, Arista argues that even if the

> three breaches occurred and that they were material, it is undisputed that they occurred *after* ADLE breached its obligation to pay Arista its technology development expense .... [Therefore,] [b]ecause ADLE unquestionably and materially breached the License *before* any possible breaches by Arista, the Arbitrator's finding that Arista's breaches were material and justify termination of the License is totally irrational and manifestly disregards the ... law ....

*Id.*

Finally, Arista contends that ADLE engaged in substantial, undisputed wrongdoing that warrants vacating the Arbitration Award. In support of their claim, Arista claims that ADLE, in an effort to avoid compensating Arista, hired Kyle Fields, who had previously been hired by Arista to salvage the Commercial Brake project. Arista maintains that "Fields acted as ADLE's double agent, giving ADLE the benefit of every-

thing he was paid to do for Arista." *Id.* at 15.

## C. ADLE's contentions

ADLE refutes Arista's contention that the failure to pay royalties does not amount to a material breach. In support of their position, ADLE points to the License in question which "provides that ADLE can terminate for a 'material' breach by Arista, and that 'a' failure to pay royalties 'shall' be deemed to be a 'material' breach." (License at IV2(a)). Moreover, ADLE submits that Arista's claim that no material breach occurred is unsupported by the evidence. Specifically, ADLE contends that the evidence revealed that Arista failed to properly mark ADLE's patent numbers on the packaging of the product it sold and that Arista failed to disclose technology improvements to ADLE in a timely manner—both of which constitute, in their opinion, a material breach. In support of their claim that Arista failed to properly mark ADLE's patent numbers on the packaging, ADLE contends that the owner of Arista, Richard Leifer, specifically acknowledge in his pretrial affidavit that Arista "stopped using the patent number on the box." In addition, ADLE claims that Arista "never denied that the patent-marking breach had occurred [until] after the Arbitrator issued his Award . . . ." *Id.* at 9.

Similarly, in support of their contention that Arista failed to disclose technology improvements in a timely manner, ADLE asserts that "only months after the License was signed, [Arista's reports] suddenly stopped being sent to ADLE." *Id.*

ADLE contends that there is no inconsistency between the Arbitrator's decision that ADLE should pay Arista for "ATI Technology" and his decision that ADLE did not breach its obligations under the License. In addition, ADLE claims that their alleged breach for non-payment of "ATI Technology" occurred *after* Arista's own breaches. In support of their contentions, ADLE asserts that:

Arista never asked ADLE for reimbursement under Article VIII.2 of the License until long after this lawsuit was filed . . . . [Therefore], consistent with this record, the Arbitrator specifically found that July 19, 1996 was the date 'when the issue of ATI Technology was first raised [by Arista] and, therefore, might be considered a demand.' This date of Arista's first demand—17 months after Arista filed this action—is long after Arista's multiple breaches of the License, and long after the License had already been 'properly terminated in 1995.'

*Id.* at 10–11. In addition, ADLE asserts that:

the record does *not* support Arista's assertion that ADLE's revenues from the VCR manufacturers were sufficient for the reimbursement of 'ATI Technology' expenses to Arista in 1994. ADLE stipulated that its revenues from VCR manufacturers were sufficient to permit payment of $700,-000 to Arista under the License formula for 'ATI Technology.' However, the stipulation was as of August 26, 1996—long after Arista's multiple breaches and termination of the License in 1995.

*Id.* at 11–12.

Finally, ADLE refutes Arista's allegation that "commercial immorality" was committed when ADLE hired Kyle Fields. ADLE supports their contention by noting that "All of Arista's technology had to be 'promptly' disclosed to ADLE. Accordingly, none of that information was confidential as to ADLE, and ADLE's use of that technology did not constitute misappropriation."

## D. The Court's findings

The Arbitrator in this case did not provide a detailed analysis supporting his findings. Therefore, if the Court can infer from the facts of the case that the Arbitrator's decision was not irrational or in manifest disregard of the law or that he exceeded his power, the Court must confirm the award. Moreover, even if the Court finds that the Arbitrator's decision was based upon an error of fact or an error of law, the Court may confirm the award. *See Standard Microsystems Corp.*, 103 F.3d at 13. It is clear that many issues of both fact and law existed in this arbitration proceeding. Indeed, the length of the arbitration, the number of wit-

nesses, the number of exhibits, and the magnitude of the legal briefs that were filed on behalf of both parties, indicates to this Court that the underlying issues and factual determinations could not have been easily resolved by the Arbitrator.

■ The Court now turns its attention to the apparent inconsistency in the Arbitration Award that determined that both (1) Arista breached the License in question, and (2) ADLE licensed Arista's technology to other competitors thus requiring them to pay Arista approximately $700,000. It seems logical at first glance that the party which materially breached the License first would absolve the other party from further performance of the License. In Massachusetts, which was the uncontroverted choice of law (License at X3) in this case, "[i]t is well established that a material breach by one party excuses the other party from further performance under the contract." *Ward v. American Mut. Liability Ins. Co.*, 15 Mass.App.Ct. 98, 443 N.E.2d 1342, 1343 (Mass.App.Ct.1983) (citations omitted). Therefore, if Arista materially breached the License before ADLE licensed Arista technology to competitors, the Arbitrator should not have found that ADLE owed Arista approximately $700,000 since they would have been excused from further performance under the License. Conversely, if ADLE materially breached the License first by licensing Arista technology to competitors without paying Arista their expenses as expressly set-forth in the License, Arista would have been excused from further performance under the License and the Arbitrator could not have found Arista to have materially breached the agreement.

While Arista maintains that the Arbitrator's decision was inconsistent in that it found both that Arista materially breached the License *and* that ADLE owed Arista approximately $700,000 for payment of technology development expenses, the Court is mindful that in order to vacate the Arbitration Award it must find that the Arbitrator's decision was irrational or in manifest disregard of the law, or an abuse of his power. Further, where the Arbitrator fails to provide a reason for his decision, the Court need only infer from the facts of the case what were the potential grounds for the arbitration decision.

■ It is the Court's view, with reasonable certainty, that the Arbitrator awarded Arista $700,000, despite also finding that it had breached the License, because he believed that any other finding would have unjustly enriched ADLE. By awarding Arista $700,000, the Arbitrator equitably resolved the dispute between the two parties by reimbursing Arista for its incurred amount of out of pocket expenses. In Massachusetts, quantum meruit and unjust enrichment are equitable remedies that permit a court to award damages even where no enforceable contract exists, so long as it serves the interests of justice. *See Salamon v. Terra*, 394 Mass. 857, 477 N.E.2d 1029 (1985). In *Salamon*, the Massachusetts Supreme Judicial Court explained that, "A person who has been unjustly enriched at the expense of another is required to make restitution to the other. The underlying basis for awarding quantum meruit damages ... is unjust enrichment of one party and unjust detriment to the other." *Id.* 477 N.E.2d at 1031 (citation omitted). In addition, the Federal District Court of Massachusetts held that, "[a] constructive trust is also imposed to avoid the unjust enrichment of one party at the expense of the other where 'information confidentially given or acquired was used to the advantage of the recipient at the expense of the one who disclosed the information.'" *Mass Cash Register, Inc. v. Comtrex Systems Corp.*, 901 F.Supp. 404, 423 (D.Mass.1995) (quoting *John Alden Transportation Co., Inc. v. Bloom*, 415 N.E.2d 250, 251 (Mass.App.Ct. 1981)) (other citations omitted). Using an unjust enrichment theory, the Massachusetts courts have also awarded expenses, despite the absence of a valid contract, in cases where the legal title to property was obtained by fraud or in violation of a fiduciary relation. *See Nessralla v. Peck*, 403 Mass. 757, 532 N.E.2d 685, 689 (1989) (citing *Barry v. Covich*, 332 Mass. 338, 124 N.E.2d 921 (1955)).

■ Whether or not ADLE was excused from performance of the License due to Arista's breach, it can be readily inferred that the $700,000 award to Arista was based upon the

Arbitrator's equitable decision that ADLE would have been unjustly enriched had they used Arista's technology without paying for its research expenses. The Arbitrator found that ADLE developed Arista's technology without paying their technology development expenses. This fair and equitable decision by the Arbitrator can hardly be said to be irrational, an abuse of his power, or in manifest disregard of the law. Any other decision by the Arbitrator would have permitted ADLE to profit from Arista's technology without ever paying Arista for their out of pocket expenses for time, research, and development. Regardless of whether Arista breached the License first, the Arbitrator held, in the interests of justice and equity, that ADLE should not be absolved from reimbursing Arista for their technology development expenses.

To modify or vacate the Arbitration Award, the Court must find that (1) the Arbitrator knew a governing legal principle yet refused to apply it, and (2) the law that the Arbitrator refused to apply was well defined, explicit, and clearly applicable to the case. Arista has failed to prove either of these elements. Arista has not demonstrated to this Court that the Arbitrator knew of a governing legal principle yet refused to apply it. Nor has Arista proved that the law that the Arbitrator allegedly refused to apply was well defined, explicit, and clearly applicable to this case. Conversely, it appears to this Court that a rationale ground for the Arbitration decision can be inferred from the facts of the case, in that the Arbitrator justly and equitably resolved the dispute between Arista and ADLE within the proper confines of the law. The Court finds that the award in this case has more than a "barely colorable justification" for its outcome. *See Matter of Arbitration Between Andros Compania Maritima*, 579 F.2d 691, 704 (2d Cir.1978). Therefore, the Court declines to vacate the Arbitration Award in any respect.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the defendant's motion to confirm the Arbitration Award in its entirety is **GRANTED**; it is further

**ORDERED**, that the plaintiff's motion to confirm in part and vacate in part the Arbitration Award is **GRANTED** with respect to those findings of the Arbitrator that the plaintiff seeks to confirm, and **DENIED** with respect to those findings of the Arbitrator that the plaintiff seeks to vacate; it is further

**ORDERED**, that the Clerk of the Court close the case.

**SO ORDERED.**