Laura GLAZER, Plaintiff,

v.

AA PREMIER REALTY, LTD. a/k/a Re/Max Premier Realtors and Salvatore J. Sanzone, and Mary Lynn Billman, Defendants.

No. CV–02–6484 (ADS)(WDW).

United States District Court,
E.D. New York.

Nov. 25, 2003.

Michael A. Markowitz, PC, Hewlett, NY, by Michael A. Markowitz, of Counsel, Attorneys for the Plaintiff.

Cobb & Cobb, Esqs., Tuxedo, NY, by John W. Cobb, of Counsel, Attorneys for the Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On December 11, 2002, Laura Glazer ("Glazer" or the "plaintiff") commenced

this action alleging that AA Premier Realty Ltd., a/k/a Re/Max Premier Realtors ("AA Premier Realty"), Salvatore J. Sanzone ("Sanzone"), and Mary Lynn Billman ("Billman") (collectively, the "defendants") violated section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), *et seq.* The complaint also alleges a violation of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. § 1961, *et seq.;* a breach of fiduciary duty; fraudulent misrepresentation; and a breach of contract. On February 13, 2003, United States Magistrate Judge William D. Wall "So Ordered" a letter application which memorialized an agreement by the parties to submit this case to binding arbitration. On April 29, 2003, an arbitration hearing was conducted by the Honorable Stanley Harwood pursuant to Judge Wall's Order. On May 22, 2003, an Award of Arbitrator (the "Award") was filed by Judge Harwood.

Presently before the Court is Glazer's Motion to Confirm the Arbitration Award pursuant to section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9. The plaintiff also requests that the Court award her costs, disbursements and "other and further relief" that the Court deems just and proper.

## I. BACKGROUND

In 1999, Glazer, a widow more than 70 years of age, was introduced to Sanzone as a broker employed by AA Premier Realty. Glazer retained AA Premier Realty to sell her house located in Hicksville, New York. On or about November 3, 1999, based on a representation made by Sanzone that he could invest Glazer's money to yield a 16% return, Glazer withdrew $151,098.13 from her annuity account, which was earning interest at 4%, and delivered that sum to AA Premier Realty.

Subsequent to the November 3, 1999 delivery of $151,098.13 to AA Premier Re-

alty, Glazer repeatedly requested that Sanzone provide her with written documentation that her investment was, in fact, yielding a return of 16%, as promised. Rather than provide this documentation, on January 1, 2000, at the suggestion of Sanzone, Glazer and Billman, a shareholder, director and officer of AA Premier Realty, executed a document purporting to be an agreement to sell AA Premier Realty stock to Glazer for $155,000.00. This agreement stated that Billman held 75% of all issued and outstanding capital stock of AA Premier Realty and that Glazer purchased the remaining 25%. However, a stock certificate was never delivered to Glazer despite the fact that the agreement provided for this to be done. Also, contrary to the terms of this agreement, AA Premier Realty's corporate books did not contain any records of the assignment of stock from Billman to Glazer. Rather, the corporate books indicated that Billman and Sanzone were the only shareholders.

In the course of selling her house on November 29, 1999 and immediately thereafter, AA Premier Realty, through its secretary, Sanzone, delivered money to third parties on behalf of Glazer. This money consisted of closing costs in the amount of $29,207.50 and repairs to the house in the amount of $2,425.00, for a total sum of $31,632.50.

On March 1, 2000, Glazer loaned an additional $100,000. to AA Premier Realty based on a representation by Sanzone that this money would be invested in a professional building to be occupied by doctors. AA Premier Realty prepared and signed a promissory note promising to pay Glazer $96,000 with interest at 8% per month in 60 monthly payments of $1,800 each, in repayment of this loan. The promissory note did not provide that Glazer could accelerate repayment in the event that AA Premier Realty failed to make payments

on the due dates. From the time that the promissory note was signed, the defendants made periodic payments on it to Glazer in the sum of $33,998.98.

On April 7, 2000, Glazer and Sanzone signed another agreement purporting to sell stock of AA Premier Realty to Glazer. This agreement stated that Sanzone held 75% of the issued and outstanding capital stock of the corporation and Glazer purchased the remaining 25%. However, similar to the situation involving the January 1, 2000 agreement, a stock certificate was never delivered to Glazer. Furthermore, this agreement is contradicted in subsequent corporate documents listing Billman and Sanzone as the only shareholders in AA Premier Realty.

In or about 2001, Billman and Sanzone, by telephone and in person, stated to Glazer that an application for a credit card was to be signed by Glazer in her personal capacity in accordance with her ownership duties in AA Premier Realty. The defendants represented that they would make full and complete payment on each monthly credit card statement. Subsequently, Glazer signed the application for a Capital One Bank ("Capital One") credit card and the defendants mailed the signed application to Capital One. This credit card was subsequently used by the defendants for business and personal reasons. Because the only address on file with Capital One was a location operated by the defendants and the plaintiff's residential address was not used for the delivery of the bank information, Glazer never received any of the credit card statements. The defendants failed to make full and complete payment on each monthly credit card statement and Glazer became responsible for the debt due and owing to Capital One in the amount of $1,854.84.

On October 17, 2002, the plaintiff made the following demands of the defendants in writing: (1) payment in the sum of $7,200.00 to bring the payments due and owing under the promissory note up to date; (2) an inspection of AA Premier Realty's corporate books and records for pursuant to the provisions of New York Business Corporations Law ("BCL") § 624(b); (3) the production of AA Premier Realty's annual balance sheet and profit and loss statements for the preceding fiscal year as well as any interim statements; (4) the payment of all outstanding sums and money due and owing under the Capital One credit card and the closure of Glazer's credit card account. On November 8, 2002, the defendants issued checks to the plaintiff in the amount due and owing under the promissory note. However, after the plaintiff sent another demand letter on November 11, 2002 requesting permission to inspect AA Premier Realty's books, the defendants caused a stop payment on these checks.

Subsequently, on December 11, 2002, the plaintiff commenced this action alleging violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), et seq., RICO, as well as a breach of fiduciary duty, fraudulent misrepresentation, and a breach of contract.

On January 9, 2003, the defendants filed a motion to stay or to dismiss the complaint and for an order compelling arbitration of the claims. The basis for the defendants' motion to compel arbitration was that both the January 1, 2000 agreement and the April 7, 2000 agreement contained "clear language calling for the arbitration of any disputes arising between the parties." Defs. Mem. In Support of Mot. to Stay or Dismiss Pls.' Compl. at 3. In particular, both of the agreements state that "[a]ny disagreement that arises between the two Stockholders shall be submitted to binding arbitration (AAA or similar) within the State of New York." Id. Furthermore, on January 17, 2003, John Cobb, Esq.,

attorney for the defendants, submitted a letter application to the Court requesting that the defendants' Motion to Stay or Dismiss the Complaint be withdrawn because the parties "ha[ve] agreed to submit the matter to binding arbitration." Letter from Cobb to the Court of 1/17/03. Accordingly, on February 13, 2003, Judge Wall granted the plaintiff's letter application and ordered that the parties may proceed with private arbitration.

As stated above, on April 29, 2003, an arbitration hearing was conducted before the Honorable Stanley Harwood. The plaintiff testified on her own behalf and Sanzone appeared and testified on behalf of the defendants. On May 22, 2003, the Arbitrator served and filed his Award which held that the plaintiff is entitled to a judgment against the defendants in an amount of $161,721.49 on the grounds of (1) fraud in the purchase and sale of securities in violation of the Securities Act of 1934, 15 U.S.C. § 78j(b); (2) breach of fiduciary duty; and (3) other misrepresentations of material facts.

Presently before the Court is the plaintiff's motion pursuant to 9 U.S.C. § 9 to confirm the Award. The plaintiff also requests that she be awarded costs and disbursements. The defendants oppose the plaintiff's motion on the grounds that this Court lacks subject matter over this matter. The defendants also request that the Court dismiss the plaintiff's action pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure. ("Fed. R. Civ.P.").

## II. DISCUSSION

The defendants oppose the plaintiff's motion to confirm the Award on the basis that the Court lacks subject matter jurisdiction over this matter. Specifically, the defendants maintain that because the plaintiff has failed to allege any prima facie causes of action under federal statutes, the plaintiff is not entitled to invoke the provisions of the FAA to confirm the Award or enter judgment.

### 1. Standard of Review

■ At the outset, it should be noted that the fact that the parties consented to submit this matter to binding arbitration is sufficient to conclude that the Court has subject matter jurisdiction over this case. *See Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 705 (2d Cir.1985) ("[A] court which orders arbitration retains jurisdiction to determine any subsequent application involving the same agreement to arbitrate, including a motion to confirm the arbitration award."); *see also Pennsylvania Engineering Corp. v. Islip Resource Recovery Agency, et al.*, 710 F.Supp. 456, 460 (E.D.N.Y.1989) ("Federal jurisdiction in confirming an arbitration may be implied by the parties' agreement that the decision will be final and binding."). Moreover, the Arbitrator specifically found that "the United States District Court for the Eastern District of New York has jurisdiction pursuant to 28 U.S.C. § 1931, 15 U.S.C. § 78aa and 18 U.S.C. §§ 1964(a), 1964(c), and 1965(a)." Award at 8.

■ Judicial review of an arbitration award is "extremely limited." *Wall Street Assocs., L.P., v. Becker Paribas, Inc.*, 27 F.3d 845, 849 (2d Cir.1994) (quoting *Fahnestock & Co. v. Waltman*, 935 F.2d 512, 516 (2d Cir.1991)); *see also Westerbeke Corp. v. Daihatsu Co.*, 304 F.3d 200, 208 (2d Cir.2002); *Sanders v. Gardner*, 7 F.Supp.2d 151 (E.D.N.Y.1998) ("To satisfy arbitration's twin goals of settling disputes efficiently and avoiding long and expensive litigation, arbitration awards are subject to very limited review."). The party moving to vacate an arbitration award has the burden of proof and this burden "is a heavy one." *Lew Lieberbaum & Co., Inc. v. Randle*, 85 F.Supp.2d 123, 126 (E.D.N.Y.2000) (citing *Folkways Music*

*Publishers, Inc. v. Weiss,* 989 F.2d 108, 111 (2d Cir.1993)); *see also Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,* 103 F.3d 9, 12 (2d Cir.1997). The Second Circuit has stated that an award must be confirmed so long as it offers even a "barely colorable justification" for its outcome. Matter of Arbitration Between *Andros Compania Maritima,* 579 F.2d 691, 704 (2d Cir.1978); *see also Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,* 103 F.3d at 12.

■ Accordingly, "[t]he court must grant confirmation of an award unless a statutory basis for vacating or modifying the award is present, or unless the award was made in manifest disregard of the law." *National Ass'n of Broadcast Employees & Technicians AFL–CIO v. Nat'l Broadcasting Co.,* 707 F.Supp. 124, 126 (S.D.N.Y.1988); *see also Tempo Shain Corp. v. Bertek, Inc.,* 120 F.3d 16, 19 (2d Cir.1997) ("Federal courts may vacate an arbitration only in limited circumstances proscribed by section 10(a) of the [FAA]."). Section 10(a) of the FAA indicates four instances when a court may vacate an arbitration award. *See* 9 U.S.C. § 10(a). None of these situations are present in this case. *See id.* In addition to the narrow exceptions provided by section 10(a), "judicial creation has permitted a court to vacate an arbitration award where the arbitrator manifestly disregard[s] the law in reaching its decision or where the award is irrational." *Arista Technologies, Inc. v. Arthur D. Little Enterprises, Inc.,* 27 F.Supp.2d 162, 167 (E.D.N.Y.1998) (internal quotation and citations omitted).

The Second Circuit has been clear that application of the "manifest disregard" doctrine is "severely limited," *DiRussa v. Dean Witter,* 121 F.3d 818, 821 (2d Cir. 1997). In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933–34 (2d Cir.1986), the Second Circuit stated:

> The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it. To adopt a less strict standard of judicial review would be to undermine our well established deference to arbitration as a favored method of settling disputes when agreed to by the parties. Judicial inquiry under the "manifest disregard" standard is therefore extremely limited. The governing law alleged to have been ignored by the arbitrators must be well defined, explicit and clearly applicable.

Thus, the Court is "not at liberty to set aside an [arbitrator's] award because of an arguable difference regarding the meaning or applicability of laws urged upon it." *Id.*

## 2. Section 10(b) of the Securities Act of 1934

The defendants contend that the Court lacks subject matter jurisdiction because "neither the complaint nor the arbitrator's award alleges facts which support a finding of liability under 15 U.S.C. § 78j(b)." Defs. Aff. In Opp. ¶ 8. The Court disagrees.

Section 10(b), which governs "manipulative and deceptive devices," states

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
>
> * * *

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement . . . any manipulative or deceptive device or contrivance of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j.

■ In order to state a claim under section 10(b), a plaintiff must establish (1) fraud in connection with the purchase or sale of a security; (2) the materiality of the alleged misrepresentations or omissions; (3) scienter; (4) reliance; and (5) loss causation. *See Citibank v. K–H Corp.*, 968 F.2d 1489, 1494 (2d Cir.1992). Furthermore, the defendants' action(s) must be conducted, either directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails. *See* 15 U.S.C. § 78j.

■ The Court notes that an arbitrator is not required to disclose the basis or rationale upon which their arbitration award is based. *See Arista Technologies, Inc. v. Arthur D. Little Enterprises, Inc.*, 27 F.Supp.2d 162, 168 (E.D.N.Y.1998). The Court need only infer the grounds for the arbitration decision from the facts of the case. *See Id.*

### A. The defendants' fraud

■ Even in the absence of a transcript, it is clear from the Arbitrator's decision that the above mentioned elements of section 10(b) were satisfied. The Arbitrator held that the defendants violated section 10(b) because they "made untrue statements of material fact as to ownership, control and shares of AA Premier Realty [and] engaged in acts, practices and a course of business that operated as a fraud

and deceit on Glazer in connection with the offer and sale of a security." Award at 8.

In particular, the Arbitrator indicated that Sanzone and Billman made the following representations of material facts to Glazer:

1. Defendants would give Glazer a 16% return on her money if she would allow Billman and Sanzone to invest that money on Glazer's behalf.

2. Billman and Sanzone were conducting the business operations and record-keeping of AA Premier Realtors in a sound and proper manner.

3. Glazer was given a total of 50% of the stock as per the January 1, 2000 agreement and the April 7, 2000 agreement.

4. Glazer would receive a total of 50% of profit as per the January 1, 2000 agreement and the April 7, 2000 agreement.

5. AA Premier Realty would keep proper books and accounts of all transactions of the corporation at its place of business to be at all times open to the inspection of Glazer.

6. AA Premier Realty would make all payments under the terms and conditions of the Promissory Note.

7. The application by Glazer individually for the Capital One credit card was necessary to conduct the business of the corporation and the defendants would make full and complete payment on each monthly credit card statement.

The Arbitrator found these representations to be false, the true facts being:

1. Sanzone and Billman did not invest Glazer's money in a manner that would give her a 16% return.

2. Glazer was not given a 50% ownership of AA Premier Realty.

3. Glazer did not receive a total of 50% of profit as per the January 7, 2000 agreement and the April 7, 2000 agreement, nor did she receive 25% of the profit pursuant to the New York State 2001 tax return.

4. AA Premier Realty did not keep proper books and accounts of all transactions of the corporation at its place of business to be at all times open to the inspection of Glazer.

5. The defendants did not make full payment under the terms and conditions of the Promissory Note and did intentionally stop payment on checks delivered to Glazer upon her demand to see corporate records.

6. The defendants did not make a full and complete payment on each monthly credit card statement.

Accordingly, the Arbitrator's determination that the defendants knowingly "[m]ade untrue statements of material fact as to ownership, control and shares of AA Premier Realty" and "[e]ngaged in acts, practices and a course of business that operated as a fraud and deceit on Glazer in connection with the offer and sale of a security" is a rational conclusion based on these facts. Award at 8; *see also Arista Technologies, Inc. v. Arthur D. Little Enterprises, Inc.*, 27 F.Supp.2d 162, 171 (E.D.N.Y.1998).

## B. Conducting the fraud though interstate commerce or the mail

■ The defendants also assert that there is no subject matter jurisdiction under 15 U.S.C. § 78j because there "has been absolutely no allegation nor any finding of fact that defendants used the mail service to induce plaintiff to purchase securities, to make any alleged fraudulent representation, or even to communicate with the plaintiff." Defs. Aff. Opp. ¶ 17. However, the defendant concedes that the plaintiff's complaint alleges that the defen-dants utilized "a means or instrumentality of interstate commerce, or of the mail" to defraud Glazer. *Id.* at ¶ 18 citing Compl. ¶ 31. This allegation, in and of itself, satisfies section 10(b)'s requirement that the fraud be conducted through "any means or instrumentality of interstate commerce or of the mails." *See Kane v. Wichita Oil Income Fund*, 1991 WL 233266, at *6 (S.D.N.Y.1991) (A complaint alleging misrepresentation "through the use of the mails and other means and instrumentalities of interstate commerce" was broad enough to encompass the mailing of an offering memorandum, which the plaintiff alleged to be the source of the misrepresentation); *see also Richter v. Achs*, 962 F.Supp. 31, 33 (S.D.N.Y.1997) ("It is well settled that the fraud itself need not be transmitted through the jurisdictional means. All that is necessary is that the designated means be used in some phase of the transaction, which need not be the part in which the fraud occurs." (citation omitted)).

Furthermore, as alleged in the complaint and indicated in the Award, the defendants' fraudulent misrepresentation to Glazer that it was necessary for her to open a credit card account was made through the channels of interstate commerce. Not only was the initial misrepresentation made during a telephone conversation, *see S.E.C. v. Softpoint, Inc.*, 958 F.Supp. 846, 861 (S.D.N.Y.1997) (The "use of a telephone is the use of a means of interstate communication regardless of the intrastate character of the call."), but the defendants also presented Glazer with a credit card application for her signature which was later mailed to Capital One by Sanzone. Moreover, in furtherance of their fraudulent scheme, the credit card statements were mailed to the defendants and not to Glazer, and Glazer was held responsible for the debt.

In addition, many of the fraudulent representations to Glazer were made during intrastate telephone conversations. Specifically, the complaint alleges that the defendants used the telephone to offer the plaintiff an opportunity to purchase AA Premier Realty's stock; to convince the plaintiff to open a credit card account; and to persuade the plaintiff to invest in AA Premier Realty's projects. It is well-settled that making intrastate telephone calls is jurisdictionally sufficient for a private securities fraud action under section 10(b). *See S.E.C. v. Softpoint, Inc.,* 958 F.Supp. at 861; *see also Richter v. Achs,* 962 F.Supp. 31, 33 (S.D.N.Y.1997) (stating that "telephone calls are sufficient to confer jurisdiction") (citations omitted).

The Arbitrator determined that the aforementioned conduct violated section 10(b) and constituted a breach of fiduciary duty and fraudulent misrepresentations by the defendants. The Court finds that these are rationale conclusions based on the facts of this case. *See Arista Technologies, Inc. v. Arthur D. Little Enterprises, Inc.,* 27 F.Supp.2d at 171 (E.D.N.Y.1998).

As stated above, to modify or vacate the Arbitrator's finding that the Court has jurisdiction over this matter, the Court must find that (1) the Arbitrator recognized a governing principle and refused to apply it, and (2) the law that the Arbitrator refused to apply was well defined, explicit, and clearly applicable to this case. The defendants failed to prove either of these elements. Conversely, a rationale ground for the Arbitration decision can be inferred from the facts of this case and the award in this case has more than a "barely colorable justification" for its outcome. *See Arista Technologies, Inc. v. Arthur D. Little Enterprises, Inc.,* 27 F.Supp.2d 162, 171 (E.D.N.Y.1998). Accordingly, the Court declines to vacate the Arbitration Award in any respect.

Moreover, the plaintiff's request for "costs, disbursements and such other and further relief this Court deems just and proper" is denied because the parties' agreement to submit this matter to binding arbitration fails to provide for the recovery of costs and disbursements; there is no indication that this issue was raised during the arbitration proceeding; and the plaintiff fails to provide any authority for her request.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED** that the defendant's cross-motion to vacate the award and dismiss the complaint is **DENIED**; and it is further

**ORDERED,** that the plaintiff's motion to confirm the Arbitration Award in its entirety is **GRANTED**; it is further

**ORDERED,** that the plaintiff's request for costs, disbursements and "other and further relief" is **DENIED**; and it is further

**ORDERED,** that the Clerk of the Court is directed to enter a judgment in favor of the plaintiff Laura Glazer and against the defendants AA Premier Realty Ltd., a/k/a Re/Max Premier Realtors, Salvatore J. Sanzone, and Mary Lynn Billman in the sum of $161,721.49; and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**