**ALI A. TAMINI, Plaintiff-Appellant,**

v.

**M/V JEWON, Defendant-Appellee,**

**and**

**Salen Dry Cargo AB, Salen Project/Liner Services, Inc., and Ahjin Shipping Co., Ltd., Defendants.**

**No. 21, Docket 86–7345.**

United States Court of Appeals, Second Circuit.

Argued Sept. 24, 1986.

Decided Jan. 6, 1987.

Craig S. English, New York City (Chalos, English & Brown and Peter Skoufalos, New York City, of counsel), for plaintiff-appellant.

Keith W. Heard, New York City (Kirlin, Campbell & Keating, New York City, of counsel), for defendant-appellee.

Before VAN GRAAFEILAND, MESKILL and NEWMAN, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

On April 7, 1986, summary judgment was entered in the United States District Court for the Southern District of New York (Sand, J.) dismissing on the merits the action of Ali A. Tamini, a foreign corporation, against the ship M/V JEWON and the

vessel's owner, Ahjin Shipping Co., Ltd., for lack of diligent prosecution. Fed.R. Civ.P. 41(b). Tamini appeals only the dismissal as against the ship. We vacate and remand.

The litigation arises out of damage to a rotary drill rig which occurred on October 30, 1981 while the JEWON was being loaded in Houston, Texas. After the drill rig had been placed on board the ship, it sustained substantial damage when the loading stevedore dropped a three-ton piece of equipment on it. At the time of the accident, Salen Dry Cargo AB was operating the vessel under a subcharter. Salen Projects/Liner Services, Inc. was a related corporation which apparently had arranged for the shipment of the drill rig to Tamini in Saudi Arabia. "Salen", as hereafter used, will refer to Salen Dry Cargo AB.

After settlement negotiations between Tamini and Salen proved unproductive, Tamini commenced this action on December 8, 1983 with the filing of a complaint. A copy of the summons and complaint was mailed to the attorney for Salen, but none of the defendants was served. On February 28, 1984, the attorneys for Salen and Tamini agreed that Judge Sand might issue an order staying the action and placing it on the suspense docket pending completion of the arbitration which Salen and Tamini had agreed to conduct. Arbitration hearings commenced on July 19, 1984 and, on July 16, 1985, the arbitrators awarded Tamini $111,884.54 plus post-award interest. However, because Salen had filed for bankruptcy in Stockholm, Sweden prior to the arbitration award, Tamini won only a hollow victory.

Tamini therefore found it necessary to pursue its claim against the JEWON. Tamini was able to locate the ship in Port Elizabeth, South Africa. On August 16, 1985, responding to Tamini's threat to arrest the JEWON in that port, the United Kingdom Mutual Steam Ship Assurance Association (Bermuda) Ltd., the protection and indemnity association in which the JEWON was entered, issued a letter of undertaking pursuant to which it agreed to appear on behalf of the vessel and to satisfy a judgment against it not in excess of $130,000. On September 27, 1985, the JEWON entered an *in rem* appearance and, on October 2, 1985, the action was restored to the active docket. Tamini never effected service on Ahjin, the shipowner, and it has not appeared in the action.

On October 2, 1985, Tamini moved for summary judgment against the JEWON, predicating its motion upon the arbitration award. On November 14, 1985, a cross-motion for summary judgment was made on behalf of the JEWON on the grounds that the action was time-barred and that Tamini had no valid maritime lien. The cross-motion also sought partial summary judgment limiting the ship's liability to $500 in accordance with the package limitation available under the United States Carriage of Goods By Sea Act, 46 U.S.C. § 1304(5), or in the alternative that the action be transferred to the Southern District of Texas so that jurisdiction over the Houston stevedore might be obtained.

On April 3, 1986, the district court issued an opinion dismissing Tamini's complaint against the JEWON and the shipowner pursuant to Fed.R.Civ.P. 41(b). In the same order, the court granted Tamini's motion for confirmation of its arbitration award against Salen. We are asked to consider only the dismissal of Tamini's *in rem* action against the JEWON, whose interests hereafter will be designated for convenience as "appellee".

Appellee does not seriously dispute that Tamini's claim for cargo damage created a maritime lien which might have been enforced by a libel *in rem* against the JEWON. *See, e.g., Demsey & Associates, Inc. v. S.S. Sea Star,* 461 F.2d 1009, 1014 (2d Cir.1972). Appellee's motion for summary judgment was based on the contention that Tamini lost its lien because it was guilty of laches. However, because laches is an equitable doctrine, it may not be based on lapse of time alone. *Holmberg v. Armbrecht,* 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946); *Larios v. Victory Carriers, Inc.,* 316 F.2d 63, 66–67 (2d Cir.

1963); *Fidelity & Casualty Co. v. C/B Mr. Kim,* 345 F.2d 45, 50–51 (5th Cir.1965). In view of the desirability of disposing of claims by way of arbitration, it would have been error to grant appellee relief on the ground of laches if appellee had suffered no prejudice because of the relatively modest delay attributable to the arbitration in the instant case.

Although the district court based its holding on Rule 41(b) rather than the laches asserted by appellee, it followed a somewhat similar line of reasoning. It held that, because Tamini was attempting to arbitrate a settlement with Salen, *see* 9 U.S.C. § 3 and Supplemental Rules of Admiralty E(3)(b), Tamini's delay in "effecting service" on the JEWON was only "moderate". The district court then turned to the question whether appellee was prejudiced by the delay. Without holding any hearing and without resolving disputed legal issues, the district court held that appellee was sufficiently prejudiced by the "moderate" delay to warrant a Rule 41(b) dismissal on the merits. We disagree.

This Court has long been committed to the proposition that dismissal of an action with prejudice is a drastic remedy which should be applied only in extreme circumstances. *See, e.g., Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir.1981); *Peterson v. Term Taxi, Inc.,* 429 F.2d 888, 891 (2d Cir.1970); *Independent Productions Corp. v. Loew's, Inc.,* 283 F.2d 730, 733 (2d Cir. 1960); *Lyford v. Carter,* 274 F.2d 815 (2d Cir.1960); *Syracuse Broadcasting Corp. v. Newhouse,* 271 F.2d 910, 914 (2d Cir.1959); *Gill v. Stolow,* 240 F.2d 669, 670 (2d Cir. 1957). The fact that the district court's dismissal of Tamini's claim involved an exercise of discretion does not place it beyond the scope of appellate review. A discretionary order may be reversed for a clear error either of fact or of law. *Power Test Petroleum Distributors, Inc. v. Calcu Gas, Inc.,* 754 F.2d 91, 95 (2d Cir.1985); *Coca-Cola Co. v. Tropicana Products, Inc.,* 690 F.2d 312, 315 (2d Cir.1982).

The error in the instant case appears to have resulted in large measure from Tamini's misguided attempt to base its motion for summary judgment against the JEWON upon the award entered in the arbitration proceeding in which JEWON was not a party. Without specifically holding that the arbitration award was binding on appellee, the district court appeared to base a finding of prejudice on an assumption that it was. The court said:

> Assuming for these purposes that plaintiff has a maritime lien for cargo damages giving it a right to proceed *in rem* against defendant vessel and that this Court would enter judgment against the vessel in the amount of Tamini's arbitration award, Salen's bankruptcy between filing and service of defendant vessel *would* result in prejudice. Despite the involvement of "the same insurer which would have paid the arbitration award against Salen," this alterntive [sic] payment would have distinct consequences for defendants. Most importantly, if they were compelled to pay the arbitration award under circumstances precluding them from asserting defenses to plaintiff's claim, [United Kingdom's] indemnity payment still would be placed on Ahjin's loss record. This would, in turn, affect Ahjin's "calls"—*i.e.,* payments made in consideration for protection and indemnity insurance "the amounts of which are based on an individual member's 'loss record.'"

> The Court observes other prejudicial ramifications of this delay in service warranting dismissal. Most strikingly, this delay precluded defendants from participating in whatever fashion in the proceeding that plaintiff alleges is binding— the arbitration between plaintiff and Salen.

(footnotes and record references omitted; emphasis in original).

There is no basis in the present record for an assumption that the arbitration award is binding on appellee. Although both Ahjin and Salen were entered for protection and indemnity coverage with United Kingdom, their contracts were unrelated and gave rise to entirely different rights

and liabilities. Moreover, each contract required a substantial deductible payment by the insured member. Salen was represented during the arbitration by its local New York counsel who worked out of Salen's New York offices. No one represented the JEWON or its owner. They were not parties to either the arbitration agreement or the arbitration proceedings and were not bound by the award. *Saxis S.S. Co. v. Multifacs International Traders, Inc.*, 375 F.2d 577, 583 (2d Cir.1967), *on appeal after remand, American Renaissance Lines, Inc. v. Saxis S.S. Co.*, 502 F.2d 674, 677 (2d Cir.1974); *Ufheil Constr. Co. v. Town of New Windsor*, 478 F.Supp. 766, 769 (S.D.N.Y.1979), *aff'd without opinion*, 636 F.2d 1204 (2d Cir.1980); *see Flanzbaum v. M & M Transp. Co.*, 286 F.2d 500, 503 (2d Cir. 1961). Accordingly, they cannot claim that they were prejudiced because they did not participate in the arbitration.

Regardless of whether appellee's liability to Tamini was determined by arbitration or litigation, appellee could not have recovered-over against Salen until that determination was made. The proceedings for arbitration between Tamini and Salen were commenced some two months before Tamini filed its complaint. On February 29, 1984, the district court stayed the action pending completion of the arbitration. The arbitrators handed down their decision in Tamini's favor on July 16, 1985. Salen had filed for bankruptcy seven months prior thereto. Appellee has not shown that its failure to participate in the arbitration prejudiced in any way its claim-over against Salen.

We are not informed whether Salen's charter party contained a clause requiring it to arbitrate its differences with appellee. However, regardless of whether appellee had to litigate or arbitrate its claim-over against Salen, there has been no showing that an earlier arrest of the JEWON would have enabled appellee to recover on that claim prior to Salen's December 1984 bankruptcy. Moreover, although appellee's counsel makes the double-edged assertion that "it is not even clear that Salen Dry Cargo is totally defunct or that some recov-

ery could not be achieved in the Swedish insolvency proceeding," appellee has made absolutely no showing that this is so or that a pre-bankruptcy judgment against Salen would have been collectible in whole or in part. Absent some financial catastrophe, companies ordinarily do not go from solvency to insolvency overnight.

Furthermore, and most importantly, although the parties agree that the ultimate and sole responsibility for the damage to Tamini's equipment rests with Empire/United Stevedoring Corp., the loading stevedore, the district court has not indicated that appellee will be prejudiced in any way in its recovery-over against that company. In fact, the district court does not even discuss appellee's right of recovery against Empire. There is nothing in the record to indicate that appellee will be prejudiced in seeking such recovery. Because appellee asserts with apparent merit that sole responsibility for the Houston accident rests with the stevedore, appellee only beclouds the issue by asserting that the Fifth Circuit will determine Empire/United's liability on a theory of negligence rather than breach of warranty. Appellee's motion to transfer this action to the Southern District of Texas obviously was not intended as an exercise in futility. Indeed, because there has been some delay in determining Empire/United's ultimate liability, which delay is attributable in part at least to Tamini, the district court, on remand, might wish to give serious consideration to granting appellee's motion for transfer of the instant action to the Southern District of Texas so that Empire/United might be joined as a party.

## CONCLUSION

Prejudice resulting from Tamini's delay can neither be presumed, *Molnar v. Gulfcoast Transit Co.*, 371 F.2d 639, 641 (5th Cir.1967), nor established by "general and conclusory allegations", *De Malherbe v. International Union of Elevator Constructors*, 449 F.Supp. 1335, 1355 (N.D.Cal.1978). *See also Point Landing, Inc. v. Alabama*

*Dry Dock & Shipbuilding Co.,* 261 F.2d 861, 865–66 (5th Cir.1958); *Harris v. Beynon,* 570 F.Supp. 690, 692 (N.D.Ill.1983). Because the district court's drastic remedy of dismissal on the merits is without adequate factual and legal support, that portion of the judgment which dismisses the complaint against the JEWON is vacated and the action against that defendant is remanded to the district court for further proceedings. Appellant may recover costs against appellee.