Evagoras PAPAYIANNIS, Petitioner,

v.

Howard ZELIN, Respondent.

No. 01 CIV.8585(RMB).

United States District Court,
S.D. New York.

June 5, 2002.

Leonard A. Rodes, Trachtenberg & Rodes LLP, New York City, for Petitioner.

Randy Scott Zelin, P.C., Westbury, NY, for Respondent.

### *DECISION AND ORDER*

BERMAN, District Judge.

## I.  Introduction

On September 24, 2001, Petitioner Evagoras Papayiannis ("Petitioner" or "Papayiannis") moved, pursuant to Section 9 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 9, for an order confirming a securities industry award issued on August 17, 2001 (the "Award").  The Award was made by an arbitrator from the National Association of Securities Dealers ("NASD") and directed Respondent Howard Zelin ("Respondent" or "Zelin") to pay a total of $42,479.80, plus $4.45 per day in interest for every day from August 17, 2001 to the date of payment.  On October 13, 2001, Respondent opposed confirmation of the Award and cross-moved to vacate the Award pursuant to Section 10 of the FAA. **For the reasons set forth below, Petitioner's motion to confirm the Award is granted, and Respondent's cross-motion to vacate the Award is denied.**

## II.  Background

In 1996, Petitioner opened a securities trading account with Worthington Capital Group, Inc. ("Worthington").  A dispute arose between Papayiannis and Worthington with respect to the alleged mishandling of the account and, on October 25, 2000, under the NASD's Simplified Arbitration Rule (the "SAR"), Papayiannis filed for arbitration.  Petitioner contended that Worthington's principal officials (the "Principals"), including Zelin, were involved in a stock manipulation scheme through which Petitioner lost more than $27,000.  Petition to Confirm, dated September 24, 2001, ¶ 11 ("Petition").

In support of the Petition, Petitioner submitted affidavits from two Worthington brokers, Bill Pinou and Manny Hagisavas, which alleged, among other things, that a Worthington Principal, Russell Ehrens ("Ehrens"), "insisted that they unload [the] stock [Brake HQ] from Worthington's proprietary account into the accounts of customers."  Affidavit of Bill Pinou, dated August 24, 1998 ("Pinou Aff.") ¶ 7; Affidavit of Manny Hagisavas, dated August 24, 1998 ("Hagisavas Aff.") ¶ 22.  When the stock price dropped after all shares had been "unloaded" into customer accounts, "Ehrens announced to Worthington's brokers that their customers must sell the Brake HQ stock they had just purchased" back to Worthington.  Pinou Aff. ¶¶ 10–13; Hagisavas Aff. ¶ 25.  As the sales were being made back to Worthington's proprietary account, the stock price rose.  Pinou Aff. ¶ 13; Hagisavas Aff. ¶ 28.  Worthington then "sold [the] stock from its proprietary account into the market place, and … made a profit of over $1 Million."  Pinou Aff. ¶ 13; Hagisavas Aff. ¶ 28.

Petitioner also alleged that Worthington was a "market maker for Brake HQ," in violation of 15 U.S.C. § 78j(b).  Demand

for Simplified Arbitration and Statement of Claim ("Statement of Claim") ¶ 21. Petitioner further alleged that, pursuant to 15 U.S.C. § 78t(a), Zelin was jointly and severally liable for all damages. *Id.* Petitioner limited his claim against Zelin to $25,000 in order to proceed under the SAR. Petition ¶ 9; Statement of Claim. Petitioner also waived a hearing and chose to attach his evidence to his Statement of Claim. Petition ¶ 10; SAR § 10302(f).

The NASD served the Respondent with a copy of the Petitioner's Statement of Claim on December 13, 2000, by mailing it to the address Respondent had designated on his NASD license.[1] *See* John Letter. The NASD case manager also notified the Respondent that, under the SAR, the case would proceed without a hearing. *Id.* When Respondent failed to file an answer within the time allotted under the SAR, the NASD sent the Respondent another letter, dated January 26, 2001, giving him additional notice and opportunity to be heard, but also explaining that the arbitration would proceed even without an answer.[2] *See* Orabona Letter; *see also* Affirmation in Support of Randy Scott Zelin, dated October 13, 2001, cross-moving for an order vacating the Award and Opposing Petition ("Cross Motion and Opp.") ¶ 8 and Ex. D. On February 16, 2001, through his attorney, Randy Zelin ("Respondent's

Attorney"), Respondent submitted an answer, consisting of general denials and defenses.[3] *See* Statement of Answer ("Answer"). Respondent also sought to assert third-party claims against two Worthington brokers, although there is no evidence in the record that he served these third-parties with process. *Id.*

On April 12, 2001, Petitioner submitted additional exhibits and a reply which asserted, among other things, that Respondent's Answer "is submitted with no proof in this non-hearing simplified arbitration." Claimant's Reply to Zelin's Statement of Answer ("Reply") ¶ 2. After receiving the Reply, Respondent's Attorney made no attempt to submit evidence or even to contact the NASD. Rather, Respondent's Attorney alleges that he "waited to hear from the NASD on two issues: the appointment of an arbitrator [and] the late filing of Zelin's answer." Cross–Motion and Opp. ¶ 14. On June 26, 2001, the Arbitrator requested a statement of attorney's fees from Petitioner. *See* Petition, Ex. G.

The Arbitrator issued a decision in favor of Petitioner on August 17, 2001, which was sent to Petitioner and forwarded by Petitioner to both Respondent and Respondent's Attorney. *See* Petition, Ex. H. The decision states, in relevant part: "the undersigned arbitrator has decided and

---

1. No letters mailed to Zelin were ever returned ("undelivered") to the NASD. Letter from NASD Legal Assistant Beverly John to Petitioner's attorney Leonard Rodes, dated November 1, 2001 ("John Letter").

2. The letter states, in relevant part, that *"this case will continue to be processed with or without your Statement of Answer.* You should be aware that, notwithstanding your failure to answer, the Panel may render an Award against you."* Letter from Jennifer Orabona to Howard Zelin, dated January 26, 2001 ("Orabona Letter") (emphasis in original).

3. At the time, Zelin gave no reason why his Answer was late. Before this Court, Zelin asserts, unpersuasively, that he did not receive timely notification of the arbitration because the "notices and pleadings were sent to a Florida address—an address where I had contemplated spending a substantial amount of time at (at the time I provided the NASD with the address). However, things did not work out as I expected, and as I never re-registered with the NASD, the address was not updated, and the NASD continued to correspond with me at the Florida Address." Affidavit of Howard Zelin, dated October 16, 2001 ("Zelin Aff.") ¶ 4.

determined in full and final resolution of the issues submitted for determination as follows: 1) Respondent Howard Zelin, is liable and shall pay to the Claimant $25,000." NASD Dispute Resolution Award, dated August 17, 2001. The amount of the Award was detailed as follows:

a) $25,000 to Papayiannis on his claim;

b) $3,500 to Papayiannis for attorney's fees;

c) $212.50 to Papayiannis for filing fees;

d) Pre–Award interest of 12% per annum from January 14, 1997 to the date of Award; and

e) Post–Award interest of 6.5% per annum after date of Award until payment.

In a phone conversation between counsel, Respondent's Attorney indicated that the Respondent would not pay the Award voluntarily, prompting Petitioner to institute the present action. *See* Petition ¶ 16.

### III. Standard of Review

■ The scope of review of an arbitration award is "very narrowly limited," *Americas Ins. Co. v. Seagull Compania Naviera, S.A.*, 774 F.2d 64, 67 (2d Cir. 1985), so as "to avoid undermining the twin goals of arbitration, namely settling disputes efficiently and avoiding long and expensive litigation." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.* 103 F.3d 9, 12 (2d Cir.1997) (quoting *Folkways Music Publishers v.*

*Weiss,* 989 F.2d 108, 111 (2d Cir.1993)); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."). Under the FAA, "the validity of an award is subject to attack only on those grounds listed in § 10, and the policy of the FAA requires that an award be enforced unless one of those grounds is affirmatively shown to exist." *Wall Street Assocs. L.P. v. Becker Paribas Inc.,* 27 F.3d 845, 849 (2d Cir. 1994); *see also* 9 U.S.C. § 9 ("the court must [confirm an arbitration award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."). In addition to the statutory grounds for vacatur, "a district court may vacate an arbitration award when the arbitrators acted in manifest disregard of the law." *Polin v. Kellwood Co.,* 103 F.Supp.2d 238, 256 (S.D.N.Y.2000) (citations omitted).

### IV. Analysis[4]

#### A. Notice and Opportunity to be Heard

■ Respondent alleges that "[he] was wholly denied the opportunity to present evidence pertinent and material to the controversy—in fact, [he] was never even given notice and opportunity to be heard at all."[5] Cross–Motion and Opp. ¶ 18. Peti-

---

4. Petitioner urges the Court to apply the rules of the FAA. Petitioner's Memorandum of Law, dated November 1, 2001 ("Petitioner's Mem.") at 8. Respondent does not oppose the application of FAA rules, but cites to both state and Federal law throughout his papers. The rules of the FAA apply because, among other reasons, Petitioner presents sufficient evidence of a connection between the transactions at issue and interstate commerce. *See* 9 U.S.C. § 2 (granting federal jurisdiction where there is "a transaction involving [inter-

state] commerce"); *see also Barbier v. Shearson Lehman Hutton, Inc.,* 948 F.2d 117, 120 (2d Cir.1991); Petitioner's Mem. at 8. The Court has also considered Respondent's state law authorities.

5. Vacatur may be appropriate where "the arbitrators were guilty of misconduct ... in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of the parties have been prejudiced." 9 U.S.C. § 10(a)(3).

tioner counters that Respondent "ignored most of the mail that the NASD sent to [Mr. Zelin's] Florida address that [he] chose to list as his address for NASD registration purposes" and that "[Respondent's Attorney] simply ignored the [SAR]." Petitioner's Mem. at 10. Petitioner is persuasive.

Respondent was given ample notice and an adequate opportunity to participate in the arbitration. *See* Sec. II, *infra*, at 3–4. "Federal courts do not superintend arbitration proceedings [and] review is restricted to determining whether the procedure was fundamentally unfair." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir.1997) (citations omitted); *see also Concourse Beauty School, Inc. v. Polakov*, 685 F.Supp. 1311, 1318 (S.D.N.Y.1988) ("The misconduct must amount to a denial of fundamental fairness of the arbitration proceeding in order to warrant vacating the award.") (citations omitted).

The process here was fair. Among other things, the NASD sent the Complaint to Respondent Zelin at the address which he, himself, listed on his NASD license; no letters were returned to the NASD, nor was any change of address submitted by Zelin to the NASD. Respondent retained counsel and submitted an Answer; and after Respondent's Attorney appeared, all correspondence was forwarded both to him and the Respondent. Respondent was given the opportunity to present evidence and he and his attorney failed to do so. Respondent, through his counsel, chose not to present any evidence with the Answer. Also, Respondent never requested an opportunity to submit additional documents, as is permitted under the SAR.[6] Respon-

dent offers no credible proof that he was, in any way, improperly precluded from participating in the arbitration. The Respondent must prove a statutory basis for vacatur by "clear and convincing evidence," [7] *Polin*, 103 F.Supp.2d at 256; here, the burden is not met by his belated allegation that he "fully intended to submit evidence over and above the Statement of Answer." Zelin Aff. ¶ 7.

## B. Finality of the Award

■ Respondent alleges that "the award was indefinite and was not final." Cross–Motion and Opp. ¶ 22, presumably relying on Section 10(a)(4) of the FAA, which provides that an award may be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

■ The Award, by its terms, is "definite and final." *Konkar Maritime Enters. v. Compagnie Belge D'Affretement*, 668 F.Supp. 267, 273 (S.D.N.Y.1987) (citations omitted). For an award to be final and definite (legally), it "must both resolve all the issues submitted to arbitration, and determine each issue finally so that no further litigation is necessary to finalize the obligations of the parties under the award." *Id.* That standard is met here.

■ First, as Petitioner asserts, "based on the evidence submitted by [Petitioner] and, also, the lack of evidence submitted by [Respondent], there is every reason to infer that the arbitrator considered and rejected [Respondent's] defenses." Petitioner's Mem. at 12. Under established

---

6. SAR § 10302(k) reads: "In his discretion, the arbitrator may, at the request of any party, permit such party to submit additional documentation relating to the pleadings." Petition, Ex. C.

7. *See supra* at 231, n. 5.

case law arbitrators may issue decisions without explaining their reasoning in detail. *See Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 121 (2d Cir. 1991) ("arbitrators need not explain their rational for an award ... if a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed.") (citations omitted). Petitioner submitted a significant amount of evidence of improper transactions at Worthington affecting his account in both his Answer and his Reply, while Respondent offered virtually no evidence at all. It is reasonable to infer that the Arbitrator considered both sets of papers and appropriately chose to adopt Petitioner's position.

Second, while Respondent asserts that the Award is not final because "[Respondent's third-party claims] were not properly considered," Cross–Motion and Opp. ¶ 22, it is more reasonable to conclude that Respondent "failed to assert his alleged third-party claims in accordance with NASD rules." Petitioner's Mem. at 13. Respondent presents no evidence that he followed the NASD procedure for asserting third-party claims, including service of process. Section 10302(d) of the SAR requires that a party asserting third-party claims must serve copies of the complaint and the answer on the additional parties.[8] Here, the Respondent did not effect service, and, accordingly, the third-party claims were never perfected and "submitted" to the Arbitrator for her consideration. *See* SAR § (d); *see also Buenamar Cia. Nav. S.A. v. Demat Corp.*, 85 Civ. 9788(CSH), 1987 WL 17651, at *3 (S.D.N.Y.1987) ("Jurisdiction, of course, is a composite of two separate notions: (1) a basis or predicate of jurisdiction, and (2) a method of notice reasonably calculated to apprise the respondent of the proceeding.") (quoting N.Y.C.P.L.R. § 403 reprinted in McKinney's Consol. L. of N.Y. (1972)).

## C. Manifest Disregard

Respondent argues that "there was no evidence that Zelin was either primarily, or secondarily liable to plaintiff," and "consequently, the Award was equally in manifest disregard of the law regarding both primary and secondary liability in the area of securities law." Cross–Motion and Opp. ¶ 25. Petitioner offered evidence that Respondent was a Worthington Principal and that Worthington engaged in manipulative stock practices. Respondent has not shown that the Arbitrator erred or failed to understand the law. Petitioner's Mem. at 14. Respondent has certainly not shown "manifest disregard." The standard for vacatur based upon manifest disregard requires "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." *Siegel v. Titan Indus. Corp.* 779 F.2d 891, 892 (2d Cir.1985) (per curiam). The Arbitrator must be shown to have "understood and correctly stated the law, but proceeded to ignore it." *Id.* at 893. There is no such showing by Respondent here.

There is certainly more than a "barely colorable justification for the outcome

8. SAR 10302(d) states, in relevant part:
    The answer shall designate all available defenses to the Claim and may set forth any related counterclaim and/or related Third–Party Claim the Respondent(s) may have against the Claimant or any other person. If the Respondent(s) has interposed a Third–Party Claim, the Respondent(s) shall serve the Third–Party Respondent with an executed Submission Agreement, a copy of the Respondent's Answer containing the Third–Party Claim, and a copy of the original Claim Filed by the Claimant.
    Petition, Ex. C.

reached." *Landy Michaels Realty Corp. v. Local 32B–32J*, 954 F.2d 794, 797 (2d Cir.1992). Both the Pinou and Hagisavas affidavits contend that "Worthington sold [Brake HQ] from its proprietary account into the marketplace, and, I estimate, made a profit of over $1 million. Meanwhile, the Worthington customers who had bought from, and re-sold to, Worthington lost ... over $1 Million." Pinou Aff. ¶ 13; Hagisavas Aff. ¶ 28. The affidavits—which are not rebutted—attribute customer loss to Worthington's acting as a "market maker for Brake HQ stock, in violation of the restrictions on its authority to so act." Pinou Aff. ¶ 7; Hagisavas Aff. ¶ 22. Petitioner also submitted a Stockholder's Agreement that detailed Respondent's "control" over Worthington—and a basis for his liability. *See* Petition, Ex. F. Petitioner's evidence was not challenged by any evidence that the Respondent presented, either before the NASD or before this Court. *See* Petitioner's Mem. at 6; *see also* Cross–Motion and Opp.

The actions attributable to Respondent could be found to violate, among other things, (i) NASD Rule 2110, requiring an NASD member to "observe high standards of commercial honor and just and equitable principles of trade;" (ii) United States Code Title 15, Section 78j(b), prohibiting use of "manipulative and deceptive devices;" and (iii) United States Code Title 15, Section 78(i), prohibiting manipulative schemes which are intended to create a false or misleading appearance of active trading for a stock.[9] Because there is substantially more than a "barely colorable justification for the outcome reached," this

Court must uphold the Award. *Landy Michaels*, 954 F.2d at 797.

## V. Conclusion

For the foregoing reasons, Petitioner's motion to confirm the Award [1] is granted. Respondent's cross-motion to vacate the Award [4] is denied. The Clerk is respectfully requested to enter judgment in favor of the Petitioner in the amount of $42,479.80, plus $4.45 per day for every day between August 17, 2001 and the date of payment and, thereafter, to close this case.

---

9. Section 78(i)(a) reads, in relevant part:

> It shall be unlawful for any person ... by use of ... any facility of any national securities exchange -
> (1) for the purpose of creating a false or misleading appearance of active trading in any security registered on a national

securities exchange, or a false or misleading appearance with respect to the market for any such security (A) to effect any transaction in such security which involves no change in the beneficial ownership.

78 U.S.C. § 78(i).