**HUNTINGTON HOSPITAL, Petitioner,**

v.

**HUNTINGTON HOSPITAL NURSES' ASSOCIATION, Respondent.**

No. CV 03–4194.

United States District Court, E.D. New York.

Feb. 10, 2004.

Epstein, Becker & Green, P.C., By Steven M. Swirsky, New York City, for Petitioner.

Davis & Hersh, LLP, By Brian P. Schechter, Hauppauge, NY, for Respondent.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an action commenced pursuant to the Federal Arbitration Act, 9 U.S.C. § 10 by Petitioner Huntington Hospital (the "Hospital") to vacate, in part, an arbitration award. Respondent, the Huntington Hospital Nurses' Association (the "Union") cross-petitions the court to confirm the award. For the reasons set forth below, the award is ordered confirmed.

## BACKGROUND

I. *The Parties and the Collective Bargaining Agreement*

The Hospital and the Union are parties to a collective bargaining agreement (the "CBA"). All nurses employed at the Hospital are required to be members of the Union, which Section 2A of the CBA recognizes as the exclusive collective bargaining agent for all nurses employed at the Hospital.

The CBA contains detailed provisions for calculating the rate of pay for nurses. Among those provisions is a schedule setting forth pay differentials granted to

nurses based upon their years of experience. Nurses receive full credit for the number of years they are employed at the Hospital. In addition, nurses who were employed at other institutions are eligible for "longevity pay" based upon their prior experience. Specifically, section 10.I of the CBA provides, in pertinent part, that nurses may receive "ten years of comparable experience at any prior acute care institution for such employment ten years prior to the date of employment ...."

In addition to setting forth salary, seniority and benefits, the CBA sets forth a dispute resolution mechanism. Specifically, the CBA provides that grievances arising out of the application of the CBA are subject to a three step process. The final step in that grievance procedure is arbitration. The CBA provides that the decision of the arbitrator is to be final and binding. The only express limit that the CBA places on the arbitrator's power states that the arbitrator "shall not have any power to add to, subtract from or otherwise amend" the CBA.

## II. *The Dispute That Led to the Arbitration*

The particular dispute that led to the arbitration at issue here arises out of salaries paid by the Hospital to two nurses who are within the collective bargaining unit covered by the CBA. The two nurses whose salaries were the subject of the arbitration are Betty Evans ("Evans") and Lynn Meyer ("Meyer").

Evans and Meyer were hired by the Hospital to work in the Hospital's cardiac catheterization laboratory (the "Cath Lab"). The record is clear, and the parties do not dispute, that the Cath Lab, which was approved for operation in 2001, was important to the Hospital's ability to deliver quality health care services to the surrounding community. It is also not in

dispute that the Hospital wished to attract the most qualified nurses to work in the Cath Lab and that both Evans and Meyer were well qualified for their positions. When first hired by the Hospital, Evans and Meyer had several years experience working in catheterization laboratories in other area hospitals. It was clear that they were not willing to relocate to the Hospital without assurances that they would be at least as well compensated as in their prior positions.

As part of their compensation packages, the Hospital negotiated the number of years experience Evans and Meyer would be credited when calculating their rates of pay. The pre-hiring negotiations between the Hospital and these nurses took place between the Hospital and the nurses—the Union was not advised of, and never became a party to, these negotiations. Ultimately, the negotiations between the Hospital and the new nurses resulted in the following salary agreements. Evans, who came to the Hospital with thirty years of experience in her field, was credited with twenty years of longevity pay for her prior experience. She began work at the Hospital's Cath Lab in June of 2001 and continues in that position to date. Meyer, who also came to the Hospital with several years prior experience, was credited with fifteen years of longevity pay for her prior experience. She began her tenure at the Hospital in December of 2001 and she also continues to be employed there. The crediting of Evans and Meyer with longevity pay resulted in a substantial increase in both of their salaries.

When the Union became aware of the longevity credits applied to the salaries of Evans and Meyer, it advised the Hospital of its belief that these nurses were being paid more than permitted by the CBA. The Union filed the issue as a grievance

and the matter was ultimately placed before an arbitrator.

### III. *The Arbitration and the Arbitrator's Award*

The issues were submitted to the arbitrator by the Hospital and the Union as follows:

(1) Is the union's grievance procedurally arbitrable? [1]

(2) If so, did the employer violate Articles 10.I and/or 2.A of the parties' collective bargaining agreement by providing more than ten years' credit for prior nursing experience toward the longevity differentials of R.N.'s Betty Evans and Lynne Meyer?

(3) If so, what shall be the remedy?

The arbitrator's opinion and award notes that both the Union and the Hospital appeared at the hearing dates and were represented by counsel. Neither party was noted to have objected to the fairness of the hearing. The arbitrator's opinion sets forth the facts as generally stated above. After holding that the dispute was timely submitted, and therefore arbitrable, the arbitrator turned to the crux of the parties' dispute as set forth in the second submitted question, *i.e.:* (1) whether section 10.I of the CBA was violated by the crediting of more than ten years longevity differential to Evans and Meyer and (2) whether section 2A of the CBA was violated when the Hospital negotiated the issue of salary directly with Evans and Meyer.

It was the Union's position before the arbitrator that the ten year longevity differential for prior experience at a hospital other than Huntington Hospital, was a cap on the number of years of credit that the

Hospital could grant an employee under the CBA. The Hospital, on the other hand, took the position that the ten year period was not a cap and that they were free to grant longer periods of longevity credit to prospective employees. The arbitrator noted that the parties had stipulated that Evans and Meyer were the first two nurses ever to have received in excess of ten years longevity credit. He also took testimony from those present at the negotiation of the CBA. This testimony recounted the negotiations that led to the drafting of Section 10.I of the CBA.

Ultimately, the arbitrator accepted the position of the Union and interpreted the ten year longevity period as a cap on the amount of prior experience credit that the Hospital could give to new employees. The Hospital was therefore found to have violated Section 10.I of the CBA when it granted Evans and Meyer more than ten years longevity credit.

In addition to holding that the Hospital violated section 10.I of the CBA, the arbitrator held that the Hospital had also violated section 2A of the CBA—that portion recognizing the Union as the exclusive bargaining agent for all nurses employed at the Hospital. While the arbitrator noted the importance of hiring the most experienced of nurses to the Cath Lab positions, he also noted that the Hospital could have engaged in mid-term bargaining with the Union to achieve this goal. By choosing instead to bargain outside of the CBA, the Hospital had violated its exclusive bargaining agent agreement with the Union.

Having determined the merits of the matter, the arbitrator then turned to consider the proper remedy. The Union urged the arbitrator to suspend the ten

---

1. The procedural arbitrability question related to the timeliness of the filing of the grievance. Although this issue was disputed before the arbitrator, the arbitrator held that the griev-

ance was timely filed and that holding is not part of the Hospital's motion to vacate the award.

year longevity cap for all nurses so as to put them all on equal footing with Evans and Meyer. Finding that this would impermissibly amend the CBA, the arbitrator rejected this invitation. The arbitrator further held that a "simple cease and desist" order would constitute nothing more than a "slap on the wrist" and would therefore further no remedial purpose. With these considerations in mind, the arbitrator issued an award requiring the Hospital to:

> take the necessary action to roll back whatever prior service credit it unilaterally granted Evans and Meyer in excess of that to which Section 10.I entitled them and to recover the illegal overpayments made to them.

It is this portion of the award that the Hospital seeks to vacate.

## IV. *The Cross–Motions*

The Hospital commenced this action by way of a petition seeking to vacate that part of the award requiring the Hospital to recover the payments made in excess of the ten years of longevity held permissible under the CBA. According to the Hospital, this part of the award must be vacated because it violates public policy, is irrational, lacks finality and definiteness and is in excess of the arbitrator's authority. In response, the Union has cross-moved to confirm the award. After outlining relevant legal principles, the court will turn to the merits of the parties' positions.

## DISCUSSION

## I. *Grounds for Vacating an Arbitration Award Pursuant to 9 U.S.C. § 10*

### A. *General Principals Governing Review Of Arbitration Awards*

■ This proceeding was commenced pursuant to the Federal Arbitration Act (the "Act"). That statute allows a party to apply to a Federal District Court to confirm or vacate an award of arbitration. *See* 9 U.S.C. §§ 9–10. Section 10 of the Act sets forth the statutory grounds upon which a court may vacate an arbitrator's award. 9 U.S.C. § 10. Additionally, a petition to vacate an arbitration award can be based on two judicially created exceptions to confirmation: (1) that the award was made in "manifest disregard" of the law and (2) that the award violates public policy. *See Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 27 (2d Cir.2000) (referring to judicially created grounds of manifest disregard of the law and violation of public policy); *see also Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Internat'l, Ltd.*, 888 F.2d 260, 265 (2d Cir. 1989) (referring to judicially created "manifest disregard" ground); *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers*, 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983) (defining public policy exception to arbitration award confirmation).

■ Whatever the ground relied upon, judicial review of arbitration awards is very limited. *Postlewaite v. McGraw–Hill, Inc.*, 333 F.3d 42, 49 (2d Cir.2003); *Glazer v. AA Premier Realty, Ltd.*, 294 F.Supp.2d 296, 300–01 (E.D.N.Y.2003). The strong policy favoring the resolution of labor disputes by arbitration dictates that courts give broad discretion to the powers of an arbitrator and construe narrowly those circumstances where an award ought to be vacated. *International Bhd. of Elec. Workers v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 714 (2d Cir.1998); *see United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) ("federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards"); *see*

also *Postlewaite*, 333 F.3d at 49 (referring to policy favoring arbitration of disputes in general).

▪ Thus, this court must "tread lightly" in its review of arbitral decisions and will not upset such decisions so long as the arbitrator is "even arguably construing or applying the contract and acting within the scope of his authority." *Niagara Mohawk*, 143 F.3d at 715, quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). Errors in interpretation of the law or facts of a particular matter will not justify review or vacating of an arbitrator's award. *Id.* In contrast, an award of arbitration will be confirmed if there is even a "barely colorable justification for the outcome reached." *Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F.3d 255, 260 (2d Cir.2003); *see also Postlewaite*, 333 F.3d at 49; *Duralab Equipment Corp. v. Amalgamated Indust. Union Local 76B I.U.E., AFL–CIO*, 1995 WL 87241 *3 (E.D.N.Y.1995).

### B. *Vacating On Statutory Grounds*

The Federal Arbitration Act allows an award to be vacated where the arbitrator exceeded his powers or those powers were "so imperfectly executed . . . that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

▪ When determining whether the arbitrator exceeded his powers, the focus is on the issue submitted by the parties. If the award disposes of that issue, correctly or not, the arbitrator will be deemed to have acted within the scope of his authority. *Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F.3d 255, 262 (2d Cir.2003). Where an arbitrator acts pursuant to a broad agreement to arbitrate, he possesses the discretion to order any remedy deemed appropriate, so

long as that remedy does not exceed the powers granted by the parties' agreement. *Id.*

▪ An award is deemed final and definite if it resolves the issues submitted to arbitration "definitely enough so that the rights and obligations of the two parties, *with respect to the issues submitted*, do not stand in need of further adjudication." *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir.1998) (emphasis in original); *Papayiannis v. Zelin*, 205 F.Supp.2d 228, 232 (S.D.N.Y.2002). The award need not resolve all issues that might arise in subsequent litigation—it need only finally resolve the issues submitted to arbitration. *Rocket Jewelry*, 157 F.3d at 177.

### C. *Vacating On The Ground Of Manifest Disregard For The Law*

▪ The manifest disregard ground for vacating an arbitrator's award was created by the United States Supreme Court in the case of *Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 98 L.Ed. 168 (1953). Vacating an award on the ground of manifest disregard of the law is "severely limited." *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 28 (2d Cir.2000), quoting, *DiRussa v. Dean Witter*, 121 F.3d 818, 821 (2d Cir.1997). For an award to be vacated on this ground there must be more than a showing that the arbitrator made an error or misstated the applicable law. *Carte Blanche*, 888 F.2d at 265; *White v. Local 46 Metallic Lathers Union and Reinforcing Iron Workers of New York City*, 2003 WL 470337 *3 (S.D.N.Y.2003). Instead, it must be shown that the error made was "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." *Arista Technologies, Inc. v. Arthur D. Little Enters., Inc.*, 27 F.Supp.2d 162, 167

(E.D.N.Y.1998). Additionally, it must be shown that the arbitrator knew of the governing legal principle but chose to ignore it. *Id.* The limited nature of the manifest disregard ground has been demonstrated by the Second Circuit which has recently described this ground as "a doctrine of last resort—its use limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the [Federal Arbitration Act] apply." *Duferco Internat'l Steel Trading v. T. Klaveness Shipping A/S,* 333 F.3d 383, 389 (2d Cir.2003).

### D. Vacating On The Ground That The Award Violates Public Policy

 Courts have come to recognize a limited public policy exception to the general rule in favor of confirmation of an arbitrator's award. The public policy exception is narrow, and requires an award to be vacated only if the arbitrator's interpretation of the contract "violates some explicit public policy" that is "well defined and dominant." *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers,* 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983).

Demonstrating the limited nature of the public policy exception, the Supreme Court refused to set aside an award in *W.R. Grace,* rejecting the argument that public policy was somehow offended by an award the violated the seniority provisions of a collective bargaining agreement. *W.R. Grace,* 461 U.S. at 769, 103 S.Ct. 2177. The public policy exception was again narrowly construed in *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), where the Court refused to vacate an arbitrator's decision that reinstated an employee suspended for suspected marijuana use. *Misco,* 484 U.S. at 43, 108 S.Ct. 364.

As set forth by the Supreme Court in *Misco,* an award will not be set aside unless a court can "delineate an overriding public policy rooted in something more than 'general considerations of supposed public interests,'. and, of equal significance, it must demonstrate that the policy is one that specifically militates against the relief ordered by the arbitrator." *Niagara Mohawk,* 143 F.3d at 716, quoting, *Misco,* 484 U.S. at 44, 108 S.Ct. 364. Thus, court looks not to the reasoning of the arbitrator, but to the particular relief ordered and then determines whether that relief violates some clearly defined public policy.

Application of these principles by the Second Circuit has led to a stringent application of the public policy exception to confirming arbitration awards. In *Niagara Mohawk,* even the strong public policy favoring safety in the operation of nuclear power plants, did not require vacating an arbitrator's award reinstating an employee found to have falsified a drug test. Because the award of conditional reinstatement did not contradict any explicit policy of the Nuclear Regulatory Commission, the court rejected the public policy argument and reversed the district court's order granting the petition to vacate. *Niagara Mohawk,* 143 F.3d at 726.

### II. Disposition of the Motions

As noted above, the Hospital alleges various grounds in support of its motion to vacate. The statutory ground relied upon by the Hospital is that "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The Hospital's non-statutory arguments allege that the award was made

in manifest disregard of the law and that the award violates public policy.[2]

■ A party commencing an action to vacate an award of arbitration "bears a heavy burden of proof." *Arista Technologies, Inc. v. Arthur D. Little Enters., Inc.,* 27 F.Supp.2d 162, 167 (E.D.N.Y.1998). With this burden and the foregoing legal principles in mind, the court turns to the merits of the parties' positions.

## A. *The Award Is Definite and Final*

■ The Hospital argues that the requirement that the Hospital recoup the overpayments to Evans and Meyer contemplates further litigation and therefore renders the award lacking in finality and definiteness in violation of 9 U.S.C. § 10(a)(4). The mere fact, however, that further litigation may be necessary to effectuate the award does not, however, render the award indefinite and lacking in finality. The arbitrator in this case was asked to resolve a particular dispute, *i.e.,* whether the longevity credits made to Evans and Meyer violated the CBA. Having found such a violation the arbitrator properly and finally decided the question presented. Where, as here, the arbitrator has disposed of the issues presented, the fact that further litigation may be necessary does not constitute a ground for vacating the award. *See Rocket Jewelry,* 157 F.3d at 176–77 (award that disposes of questions present is deemed definite within the meaning of the Federal Arbitration Act). The court therefore, rejects the Hospital's statutory argument.

## B. *The Award Neither Violates Public Policy Nor Was It Made With Manifest Disregard for the Law*

The Hospital's non-statutory arguments, *i.e.,* that the award violates public policy and was made in manifest disregard for the law, rely on the allegations that the portion of the award requiring that the Hospital recoup the overpayments to Evans and Meyer: (1) violates New York State Labor Law; (2) requires institution of frivolous litigation; (3) improperly impacts the rights of non-parties; (4) improperly orders an award of punitive damages and (5) is repugnant to the National Labor Relations Act. Given the high burden facing the Hospital, the court cannot conclude that any of these arguments has merit.

### 1. *The Award Does Not Violate the Labor Law*

■ The Hospital argues that the requirement that the Hospital obtain repayment of parts of salaries paid to Evans and Meyer would constitute a violation of Section 193 of the New York State Labor Law ("Section 193"). In general terms, Section 193 prohibits an employer from making deductions from an employee's wages without the employee's consent. According to the Hospital, it will be in violation of Section 193 if it attempts to effectuate the award by seeking to recover the excess payments made to Evans and Meyer.

This court, however, does not read Section 193 as prohibiting an employer from taking any and all action to recover salary payments made in error. It would make

**2.** The Hospital also characterizes the award as "irrational." While that term has been referred to by certain courts, the more recent precedent of the Second Circuit analyzes claims under the "manifest disregard for the law" standard. *Greenberg,* 220 F.3d at 27 (referring only to manifest disregard and public policy as the two judicially created excep-

tions to confirmation of an arbitration award); *see Arista Technologies v. Arthur D. Little Enters., Inc.,* 27 F.Supp.2d 162, 167 (E.D.N.Y.1998) (recent caselaw noted to focus on manifest disregard standard). This court will therefore not engage in any separate analysis as to the "rationality" of the award.

little sense to prohibit completely an employer from correcting salary overpayment errors. Indeed, in *Hennessey v. Board of Educ., of the City of New York*, 227 A.D.2d 559, 642 N.Y.S.2d 958 (2d Dep't.1996), relied upon by the Hospital, the court held that while garnishment of an employee's salary to recover overpayments would violate Section 193, such overpayments could be sought in a separate proceeding. *Hennessey*, 227 A.D.2d at 560, 642 N.Y.S.2d at 958. Thus, while *Hennessey* might be read to bar garnishment of wages, nothing in that case prohibits the commencement of a separate proceeding to effectuate the award.

Nor is *Hudacs v. Frito–Lay*, 90 N.Y.2d 342, 660 N.Y.S.2d 700, 683 N.E.2d 322 (1997), also cited by the Hospital, to the contrary. That case, which did not involve the payment of wages, allowed employees to repay, to their employer, funds held in trust by way of a transaction other than wage garnishment. *Hudacs*, 90 N.Y.2d at 347–48, 660 N.Y.S.2d at 702–03, 683 N.E.2d 322. Although *Hudacs* recognizes that an employer might unlawfully use a separate transaction to circumvent Section 193, the Court did not hold as broadly as the Hospital argues. Nothing in that case would prohibit the institution of a separate action by an employer to state a legitimate claim to recover wages paid in error.

In sum, the court holds that the award here does not violate public policy, nor was it made in manifest disregard for the law because it runs afoul of Section 193. Instead, the court holds that Section 193 is in no way offended by the award and that section does not require that the award be vacated.

### 2. *The Award Does Not Require Institution of a Frivolous Lawsuit*

■ For similar reasons, the court rejects the notion that confirmation of the award would require institution of a frivolous lawsuit and therefore violate public policy. As already held, nothing in the New York State Labor Law prohibits an employer from instituting an action, in good faith, to recover wages paid in error to an employee. As properly noted by the Hospital, the rules governing the commencement of lawsuits in New York State require attorneys to sign all pleadings. Such execution represents a certification that the matters presented in the paper are "formed after an inquiry reasonable under the circumstances [and that] the presentation of the paper or the contentions therein are not frivolous." Section 130–1.1–a of the Rules of the Chief Administrator of the Court. The good faith commencement of an action to recover payments made in error cannot be deemed a frivolous lawsuit that would violate the above-referenced rule.

### 3. *The Award Does Not Improperly Impact The Rights of Non–Parties*

■ The Hospital next argues that the award violates public policy because it affects the rights of individuals who were not signatories to the agreement to arbitrate and were not present at the arbitration. In support of this argument, the Hospital relies on cases involving commercial arbitrations. *E.g., Tamini v. M/V Jewon*, 808 F.2d 978, 981 (2d Cir.1987); *Compagnie Noga D'Importation et D'Exportation S.A. v. The Russian Federation*, 2002 WL 31106345 *6–8 (S.D.N.Y.2002). In such cases, courts have held that individuals who are not parties to the arbitration should not be bound by the relief ordered. *See Tamini*, 808 F.2d at 981.

Where, as here, however, the arbitration is a labor arbitration, the result is not same. A collective bargaining agreement binds all employees in the bargaining unit at the time of the making of the agreement

as well as those who thereafter join the unit. *Gvozdenovic v. United Air Lines, Inc.* 933 F.2d 1100, 1105 (2d Cir.1991). As nurses employed by the Hospital, Evans and Meyer were within the bargaining unit and bound by the CBA. There will always be cases where certain classes of employees fare better in the outcome of an arbitration. Nothing in the arbitration act or judicially created exceptions to confirmation allows an award to be vacated on the ground that the rights of certain employees may be diminished by an arbitrator's award. By simple virtue of their membership in a bargaining unit, members entrust union leadership to decide when to commence grievances for the greater good of all members. To the extent that Evans and Meyer argue that their union did not represent them properly, that is a matter that is outside of the scope of this proceeding and does not represent a valid ground for vacating an award of arbitration.

### 4. *The Award Is Not Improperly Punitive*

The arbitrator's award in this matter does nothing more than attempt to make the parties whole by ordering that Evans and Meyer be paid according to the terms of the CBA. There is nothing punitive in this award. It neither orders the payment of interest or any amount over and above the excessive and erroneous payments made. Because the court finds nothing punitive about the award, it rejects the notion that it must be vacated on this ground.

### 5. *The Award Is Not Repugnant To The NLRA*

As a final argument in support of its public policy argument, the Hospital argues that the award is "repugnant" to the National Labor Relations Act (the "NLRA"). In support of this branch of its public policy argument, the Hospital relies on proceedings before the National Labor Relations Board (the "NLRB") that predate this lawsuit. In December of 2002, the Union lodged an unfair labor practice charge against the Hospital. In that charge, the Union alleged that the crediting of Evans and Meyer with excessive longevity pay constituted an unfair labor practice in violation of the NLRA. The Hospital seeks to construe the NLRB's decision declining to pursue the Union's charge as conclusive evidence that the arbitrator violated NLRA policy when finding in favor of the Union on the grievance.

Even a cursory reading of the NLRB's decision, however, reveals that it takes no position as to the merits of the parties' dispute. Specifically, the NLRB letter informing the Union of the decision not to pursue its charge, recognizes the different interpretations of the CBA offered by the Hospital and the Union. The letter characterizes each of the parties' interpretations as "reasonable." In light of the fact that the arbitrator accepted the interpretation of one party, and the NLRB characterized each parties' position as "reasonable," the opinion of the NLRB actually supports the decision of the arbitrator to choose one of the two reasonable interpretations of the CBA. The court therefore rejects the argument that the award violates public policy on the ground that it is somehow "repugnant" to the NLRA.

### C. *Citation to Unrelated Cases Decided By The Arbitrator*

As a final matter, the court addresses the Hospital's citation of unrelated cases in which courts vacated arbitration awards rendered by the arbitrator in this matter. The court notes that there has been no allegation here that the arbitrator was in any way unfair to the parties or that he engaged in any fraud or miscon-

duct. To the contrary, a review of the arbitrator's opinion reveals that sufficient testimony was taken, no party objected to the fairness of the proceedings and an exhaustive opinion was rendered. Under these circumstances, the arbitrator's "track record" is completely irrelevant and the court rejects the attempt to somehow taint his reputation. The record of the arbitrator's awards in other proceedings is of no moment in this matter.

## CONCLUSION

In light of the foregoing, the court denies the petition to vacate the ward of arbitration and grants the cross-motion to confirm. The Clerk of the Court is directed to terminate the motions and to close the file in this matter.

SO ORDERED.